**APEX ELECTRICAL MFG. CO. et al. v. LANDERS, FRARY & CLARK.**

No. 2520.

District Court, D. Connecticut.

Nov. 10, 1937.

Rockwell & Bartholow, of New Haven, Conn. (Harry Frease and Joseph Frease, both of Canton, Ohio, of counsel), for plaintiffs.

John P. Bartlett, Richard Eyre, and George N. Robillard, all of New York City, for defendant.

THOMAS, District Judge.

This is a bill in equity which charges the defendant with infringement of eight patents for structural details of laundry machines. They are as follows: (1) Reissue patent No. 19,217 to Prachar for an ironing machine, reissued June 19, 1934, the original patent No. 1,753,964, dated April 8, 1930, having been granted on an application filed January 16, 1926; (2) the Eden patent .No. 1,408,869 for a safety wringer for washing machines, issued March 7, 1922; (3) the Kirby patent No. 1,969,178 for a safety dryer cover in a laundry machine, issued August 7, 1934; (4) the Kirby reissue patent No. 18,280 for a tub bottom and agitator in a clothes washing machine, reissued December 8, 1931; the original patent No. 1,741,191, dated December 31, 1929, having been granted on an application filed January 28, 1929; (5) the Maus Patent No. 2,021,-097 for a washing machine support, issued November 12, 1935; (6) the Dietenberger patent No. 1,712,755 for a hump agitator in a washing machine, issued May 14, 1929; (7) the Kirby patent No. 1,842,030 for frame plates in a laundry machine, issued January 19, 1932; and (8) the Kirby patent No. 1,927,665 for a dishwashing machine, issued September 19, 1933. Plaintiffs' title to the several patents is not questioned. These eight patents will be discussed in the order named.

1. Prachar Reissue Patent No. 19,217.

The claims in suit are 14, 19, 20, 21, and 24. Claim 14 is representative of the subject-matter involved, and reads as follows: "14. In an ironing machine, a pair of ironing members, one mounted for movement toward and from the other, one of said members being a roll and the other a shoe, means for shifting one of said members into and out of engagement with the other, a driving member adapted to be continuously driven, means including a clutch for connecting said shifting means with said driving member, means including a clutch for driving the roll from said driving member, means operated by said shifting means for engaging and disengaging said second mentioned clutch, and means for preventing operation of said second mentioned clutch by shifting means."

The particular purpose of the patent in respect to claims 14, 19, 20, 21, and 24 in issue is stated in lines 11–25, inclusive, page 1 of the specifications, as follows:

"The present invention has for an object to provide simplified and improved means for actuating the ironing shoe and for controlling the operation of the ironing roll.

"A further object is to provide means by which the ironing shoe may be instantly released and shifted away from the roll.

"A further object is to provide, in connection with the power operated means for shifting the shoe, means whereby the drive for the ironing roll may be so controlled by the shoe shifting means as to rotate the roll when the shoe is moved into engagement therewith, or the roll driving means may be caused to remain inoperative while the shoe is being shifted."

To attain these objects, the patent discloses an ironing machine having a pair of ironing members 3 and 4, one mounted for movement toward and from the other; one of said members being a roll 3 and the other a shoe 4. As illustrated in the drawings, the shoe is adapted to be shifted toward and away from the roll, the said shoe being suitably mounted upon a rock shaft 9 and the latter connected to a member 61 for shifting the said shoe into and out of engagement with the roll. A driving member is adapted to be continuously driven by an electric motor mounted upon the machine. A clutch 60 serves to connect the shifting member 61 with said driving member. A second clutch mechanism 47, 48 serves for driving the roll 3 from said driving member. A mechanism 57, 51, 55 operated by the shifting means 61 is adapted to engage and disengage said second-mentioned clutch 47, 48. A holdout member 99 is capable of preventing operation of said second-mentioned clutch by the shifting means. These are the elements which are defined by claims 14 and 20.

Claim 24 differs from claim 20 in not specifying in terms that there is a roll drive "clutch," but in referring to the clutch only as a mechanism for connecting the roll to the driving member, and also in specifying that the holdout member 99 is hand operated.

Claim 19 does not specify a "clutch," but does include a machine element not recited in any of the other claims in issue; namely, that the shifting means includes an element, an operator-operated means, a lever 65, and a rod 80, for effecting the driving connection between the driving and driven members, first for a part of one revolution and then for the remainder of one revolution of the driving member, to shift the shoe 4 into engagement with the roll 3.

Claim 21 is precisely the same as claim 14, except that it adds another element; namely, a manually-operated lever 93 for releasing the shoe and the roll from engagement with each other independently of the shoe shifting means.

In the operation of the machine, the shoe is shifted toward the roller; the shifting being initiated by manually-controlled means, and being accomplished by connection to the motor drive, and automatically terminating at the end of the movement. Simultaneously the roll is connected to the motor to be rotated unless the operator, in order to press rather than iron, manipulates a separate attachment to prevent the roll from rotating when in engagement with the shoe. In addition, there is a manual means for releasing the shoe from the roll upon increase or failure of power.

One of the defenses is lack of patentable novelty in view of a number of prior United States patents, and, among others, patent No. 1,591,316, issued July 6, 1926, to Iglauer for an ironing machine, on an application filed July 25, 1921, which is prior to the earliest date asserted by plaintiffs.

The Iglauer patent states: "This invention relates to ironing machines and has for its main objects the provision of a machine wherein the pressure upon the parts is created by the driving motor, thus decreasing the manual labor required; wherein the amount of this pressure can be instantly and easily adjusted; wherein the tension can be released instantly in case of accident; wherein the roller may be started and stopped automatically by the position of the shoes; and wherein the shoe and roller may also be moved toward and from each other for certain kinds of work without rotation of the roller."

Here is a reference to power shifting, to the emergency release, to the starting and stopping of the roll as the shoe moves forward and backward, and the stopping of the rotation of the roll in certain kinds of work, for example, in pressing. After describing the construction of the machine, Iglauer refers to the operation of the shoe shifting and simultaneous control of the roll drive at page 2, lines 40 to 62, and the quick independent release, at lines 62 to 74, of the specification. Then Iglauer points out the capacity of the machine for a pressing operation at page 2, lines 75 to 82, as follows: "It is also possible with this machine to press men's garments or the difficult parts of ladies' garments which cannot safely be run through such a machine in the ordinary way, merely by holding the latch 64 out of engagement with the crank 62 so that the roll will not be turned as the pressure is applied."

It cannot be questioned that the shoe 6 in the Iglauer patent is mounted for movement toward and away from the roll 5. It is also obvious that by moving the hand lever 48 in one or the other direction, the clutch parts 32 cause the worm 25 to be rotated to move the shoe shifting segment 40, thereby actuating the shoe supporting arm 13 to move the shoe toward and away from the roll. After a partial revolution of the worm 25, the clutch parts are automatically disengaged because the arm 13 in its movement causes the lever 51 to engage either the part 52 or 53 to disengage the clutch. It is also obvious that the shifting of the shoe controls the roll drive by means of a lever 64 which, at its upper end, acts on the cam 61 to engage and disengage the worm 59 and the gear 60, thus connecting and disconnecting the roll drive. It is also apparent from the Iglauer specification that when pressing is desired, the latch lever 64 may be disengaged from the crank 62 so that the roll drive remains disconnected, and it is also clear that when a quick manual release of the shoe from the roll is desired, the lever 43 serves to disconnect the clutch 42 whereby the shoe falls away from the roll.

Plaintiffs question the sufficiency of the Iglauer patent as an anticipation, asserting that there is no clutch between the driving means and the roll of the Iglauer machine, as expressly specified in some of the claims in issue, and also because there is no means for stopping engagement of the worm gears 59 and 60 for driving the roll, when the latch lever 64 is held out of engagement with the crank 62.

A clutch may be defined as a device by means of which temporary connection is made between two pieces of shafting, etc., and there is no reason to hold that in plaintiffs' patent the term "clutch" was used in any more limited sense. Under the definition given, the worm gears 59 and 60 and the means for throwing the same into and out of engagement constitute a clutch. Plaintiff's contention that the worm gears 59 and 60 will not be disengaged after stopping rotation of the roll when the latch lever 64 is held out of engagement with the crank 62 is not borne out by the record, nor is there any reason to believe that the Iglauer specification is misleading on this point.

Even if it could be held that the worm gears 59 and 60 and the means for shifting these gears into and out of engagement do not constitute a clutch, I would be constrained to decide that the mere substitution of a clutch of the type referred to by defendant as "mechanical clutch" was within the mental reach of any one skilled in the art to which the patent relates, and that it did not require invention to devise it, but only the use of ordinary judgment and mechanical skill. If there was any advantage in substituting a "mechanical clutch" for the elements 59, 60, and their shifting means, as soon as the problem was seriously and systematically studied by those competent to deal with the subject, the remedy would be promptly suggested. The suggestion of the desired change would, it seems to me, occur to the rudest and most unskilled mechanic, and so could not be called invention, and should not be dignified by letters patent.

■ In view of the foregoing, I find that the claims in suit of Prachar reissue patent No. 19,217 are invalid for want of invention.

### 2. Patent No. 1,408,869.

This patent was issued on March 7, 1932, to H. W. Eden assignor, for a wringer for washing machines, on an application filed August 13, 1917.

Prior to Eden, the commonly-used washing machine was one in which a wringer was mounted so that it could be swung around a vertical axis. This was known as the "swinging wringer" machine. A manually-operated latch was provided to hold the wringer at any one of several fixed positions. A clutch was interposed between the motor drive and the wringer shaft with a hand lever to operate the clutch. Eden's improvement consists in the provision of means to prevent adjustment or swinging of the wringer while it is under operation of the power drive. To this end Eden provided a clutch housing which has an aperture and an interior support for a spring-operated bolt, as shown in Fig. 12, which operates the interlocking member between the clutch and the latch lever 45. When the clutch is in neutral position the left-hand end of the interlocking bolt is opposite the groove of the clutch, so that the latch lever may be moved. When the clutch is in engaging position, the interlocking bolt is opposite one of the flanges of the clutch, and then the latch lever cannot be moved.

The claims relied on by plaintiffs are 8, 9, 10, and 11, of which claim 8 sufficiently illustrates the controversy, and it reads as follows: "8. In a device of the character described, the combination with a wringer pivoted about a vertical axis, and a driving member concentric with said axis, for operating the same, of means for making and breaking the operative connection between said member and wringer, means for locking said wringer in fixed position relatively to said vertical axis, and means preventing the making of operative connections between said member and wringer except when said wringer is locked."

The defenses are: (a) Invalidity for want of patentable novelty; (b) noninfringement; and (c) estoppel.

### Lack of Patentable Novelty.

Defendant relies on a number of prior patents, some of which relate to machines of the swinging wringer type, but it is admitted by defendant that they do not disclose the interlocking mechanism. The other patents relate to arts foreign to the washing machine art, such as switch signalling apparatus, turret head machines, electric controllers, etc., most of which defendant cites as disclosing interlocking mechanisms.

■ Defendant proposes to combine the foreign art patents with the washing machine patents so as to bring about the invention in issue. This is not permissible; see, for instance, Kulp et al. v. Bridgeport Hardware Mfg. Corporation (D.C.) 19 F. (2d) 659, wherein it was held that, in order "to negative invention in a novel combination, it is necessary to find in the prior art, not merely a construction which might be modified to make the patented device, but a suggestion, not only that the modification should be made, but also how to make it."

■ Defendant admits that nowhere can a suggestion be found that the modification of the patentee should be made. In other words, no one but this inventor has made this combination and the arrangement of his parts. Therefore, inasmuch as I find the combination useful, I hold it to be patentable over the prior art.

■ Defendant's assertion that the language of the claims defines only a desired result need not be seriously considered. The claims are all for a plurality of elements, one of which is expressed by the term "means" followed by a statement of function. This is permissible to properly protect an invention. If the claims were of the type containing a single element expressed as means followed by a statement

of the function of the element, they would clearly be invalid; but this is not the case in the patent at bar.

### Infringement.

■ Defendant states that, if the claims are to be read narrowly in order to save the patent, then there is no infringement. From the foregoing it appears that there is no reason why the claims should be narrowly construed, because nothing appears in the prior art which would justify such construction. The claims can clearly be read upon defendant's wringer washer, Plaintiffs' Exhibit B–5, and are infringed by the same.

### Estoppel.

■ While the patent in suit was issued on March 7, 1922, notice thereof was not given to defendant until July, 1935. Defendant claims that failure to assert infringement against it from 1922 to 1935 is sufficient to constitute gross laches, particularly in view of the fact that defendant was advertising and marketing the machine complained of during that period. Ordinarily, such a claim is sound, but to give full expression to the rule it is important to consider the facts quite fully, because if certain facts appear to have been established they may vary the application of the bald rule quite substantially.

It appears from the evidence that plaintiffs acquired the patent on April 18, 1934, but nothing on the record indicates that either plaintiffs or their predecessors in title had knowledge of the defendant's infringement. In Smith Hardware Company v. Pomeroy Co., 299 F. 544, at page 548, Judge Manton, speaking for the Circuit Court of Appeals of the Second Circuit, said: "It is no defense to a suit for an injunction and accounting for a continuing infringer to say that he has been trespassing upon the rights of the owner of the patent for years with impunity. * * * Laches is not a mere matter of time, but is a question of inequity of enforcing a claim."

See, also, Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526; Drum v. Turner (C.C.A.) 219 F. 188.

In any event, plaintiffs have not slept on their rights, because within three months after they acquired title to the patent in suit they brought suit for infringement of the same by filing a counterclaim on June 16, 1934, in the suit of the Maytag Co. v. Apex Electrical Manufacturing Co., in Equity No. 4837, then pending in the United States District Court at Cleveland, Ohio.[1] Moreover, on July 17, 1935, plaintiffs notified the defendant of their ownership of the patent in suit. There is no inequity whatever which prevents plaintiffs from enforcing their claim of infringement here, because there is no evidence whatever that the plaintiffs or their predecessors holding title to the patent in suit had any knowledge of the infringing acts of the defendant prior to the notice to the defendant on July 17, 1935. For these reasons, the defense of laches and estoppel must fail. From the foregoing discussion it follows that the patent to Eden must be held valid and infringed.

### 3. Patent No. 1,969,178.

This patent was issued on August 7, 1934, to J. B. Kirby, assignor, for a laundry machine, on an application filed December 6, 1927. The earliest date alleged for Kirby is June 7, 1926.

Generally speaking, the claims in issue define a compartment, a centrifugal drier contained therein, and a hinged cover thereon, in combination with a driving mechanism for rotating the centrifugal drier, and interlocking means for controlling and coordinating the opening and closing of the hinged cover and the operation of the driving mechanism.

Plaintiffs rely on claims 3, 30, and 32, of which claim 3 is illustrative, and it reads as follows: "3. In a laundry machine, in combination, a casing having a compartment therein, an extractor in said compartment, mechanism for rotating said extractor, a safety cover for said compartment hinged to said casing at one side of said compartment, a control rod for said mechanism movably carried by said casing in vertical position at one side of said compartment, connections between said rod and said mechanism whereby movement of said rod to one position connects said mechanism to said extractor in operating relation and movement of said rod to another position disconnects said mechanism from said extractor, means associated with the upper end of said rod whereby said rod is secured against movement into extractor-operating position except when said cover is closed and whereby it may be moved into extractor-arresting position when said cover is closed, and means for holding said cover closed when said rod occupies its extractor-operating position and for allowing said

cover to be opened widely when said rod occupies its other named position."

One of the defenses is lack of patentable novelty in view of the prior art. While defendant cites a number of prior patents, it is sufficient, for the purpose of determining the patentability of the claim in issue, to discuss only two; namely, patent No. 1,-775,048, granted to Papworth for a centrifugal clothes drier on an application filed January 19, 1926, and patent No. 1,491,133, granted to Curtis for a centrifugal extractor on an application filed November 18, 1918.

The Papworth patent discloses a vertical control rod, a cover interlock associated with it, and friction elements for driving the extractor. One of the objects of the Papworth device is set forth in lines 47 to 53, inclusive, page 1 of the specification, as follows: "One of the specific objects of the present invention is to provide means for locking and releasing the cover in and from its closed position and to prevent the release of the locking means or opening of the cover while the receptacle is being rotated."

This is one of the main objects of the patent in suit. The only criticisms which plaintiffs' expert makes with reference to this patent are: (a) That he cannot find a vertical shaft in connection with the drive of the basket; and (b) that by abnormal treatment the interlock could be abused. In answer, it is sufficient to say that vertical drive shafts in laundry machines are old and well known, and that whatever could be done by abnormal treatment is not to be considered in determining the patentability of the invention. The true test is the normal use by a normal operator.

The Curtis patent discloses a centrifugal drier and specifically refers in the specification to a safety device to prevent the extractor from being started in operation when the lid of the extractor curb is open, and which prevents the opening of the lid after the extractor is in operation. The drive of Curtis is similar to that of the patentee, and the cover is shown to interlock with a vertical rod controlling the friction drive and brake. It is true that the interlock is complicated, but it is there and seems to meet the terms of the claims.

Even if the devices described in the two patents cited as anticipating the claims were not as effective as those of the patentee, it is apparent that the choice was one between alternative means which would be obvious to any mechanic skilled in this art. To accomplish such a result did not have the quality of invention. Hence I hold the claims in suit of this patent to be invalid.

4. Reissue Patent No. 18,280.

This patent is for a clothes washing machine, reissued December 8, 1931; the original patent No. 1,741,191, dated December 31, 1929, having been granted on an application filed January 28, 1929.

The earliest date alleged for the patentee is February 25, 1924. Plaintiffs rely on claims 24, 25, and 29, of which claim 29 seems to be the narrowest. It reads as follows: "29. A clothes washing machine having in combination, a container, and agitator within said container, said agitator comprising a hollow circular base part which extends laterally close to the bottom of the container and underlies the clothing therein, the margin of said base part depending to a lower level than the portions nearer the center thereof and said agitator having a central elevated hollow portion, the container bottom having a slant-sided elevation rising into the base part of said agitator above the margin thereof, a hollow vertical sleeve located in the center of said elevation, a shaft traversing the bottom of said container and journaled inside said sleeve, driving mechanism for said shaft beneath said casing and operative connections between said shaft and agitator."

As pointed out by plaintiffs, the characteristic feature of the invention defined by these claims is a tub with a sheet metal bottom having an elevated portion for strengthening the same, in combination with an agitator base plate hollowed out for the reception of the elevated portion of the tub bottom. Agitator blades are carried by the said base plate. The base plate and the blades carried thereby are oscillated by a mechanism through the intermediary of an upright shaft which is journaled in a bearing mounted upon the bottom of the tub, and the driving mechanism for said shaft is disposed below the tub.

Defendant alleges lack of patentable novelty in view of the prior art. Of the earlier patents relied on, patent No. 74,-052, issued to Covel on February 4, 1868, and reissue patent No. 3736 to King et al. of 1869, are the most pertinent ones.

The Covel structure includes the following elements: A tub, from the bottom of which rises a convex disk f, on which is

centrally mounted an upwardly extending standard e. Placed upon the standard e is a sleeve g, to the lower end of which is secured an annular disk h, having a concave underface fitting the convex face of the stationary disk f. The sleeve g is furnished with a number of radial fins or ribs i, constituting agitator blades. The agitator blades are driven from the top, as distinguished from the structure in the patent in suit which has a bottom drive. However, bottom drive agitators were old and well known many years prior to the time that the patentee entered the field, as is shown, for instance, in King reissue patent No. 3736 of 1869. True, the Covel agitator is continuously driven while the agitator of the patent in suit is oscillated; but there is no patentable distinction in this feature.

Defendant raises the point that the bottom of the Covel tub is made of wood and does not need any strengthening; while the bottom of the patentee's tub is made of sheet iron, and therefore must be strengthened. This feature is old, as is shown, for instance in patent to Hoff No. 1,334,096, dated March 16, 1920.

All that the patentee did, as I see it, was to combine a number of elements chosen from old machines in the same art to perform in a new machine the same functions which they performed in the old machines. This adaptation required only the skill of a mechanic trained in the art, and, therefore, the combination is not patentable as an invention.

I, therefore, hold that the claims in issue of the patent in suit are invalid for lack of invention.

### 5. Patent No. 2,021,097.

This patent was issued on November 12, 1935, to F. Maus, assignor, for a washing machine, on an application filed May 13, 1925. The earliest date alleged for Maus is the said filing date. The Maus patent relates to the agitator type of washing machines; in other words, to a machine of the character described in the Kirby reissue patent No. 18,280, the claims in issue of which I have already held invalid.

Claims 16, 18, 20, and 22 of Maus are in issue. As pointed out by the plaintiffs, all the claims in issue include a supporting structure for the tub, with an agitator located in the tub, and driving mechanism for the agitator mounted in the supporting structure beneath the bottom of the tub. Also, as pointed out by plaintiffs, in claims 16 and 18 in suit, the bottom of the tub is provided with a slanting elevated portion like the bottom of the Kirby reissue tub, and claim 18 has a recessed agitator disk arranged substantially the same as in the said Kirby reissue patent, with the addition of a drainage trough between the agitator and the side of the tub, and manually-controlled drainage provisions therefrom. According to plaintiffs, in claims 20 and 22 the agitator shaft traverses the bottom of the tub, surrounded by a tubular standard to prevent leakage from the tub, with horizontal wall parts in the supporting structure for carrying a motor-driven mechanism for the agitator, and a depending wall for hiding or concealing but permitting the circulation of air about the motor-driven mechanism.

The structure described in the Kirby reissue patent No. 18,280, for which a date as early as February 25, 1924, is claimed, differs from the Maus structure only in slight details. More particularly, the Kirby patent does not refer to a drainage arrangement from the troughlike portion of the tub bottom. I hold that it did not require the exercise of the inventive faculty to place into the bottom of the receptacle a valve controlled outlet through which it is to be drained. Another difference is that in the Kirby patent the agitator shaft, which traverses the bottom of the tub, is not surrounded by a tubular standard made integral with the said bottom so as to prevent leakage from the tub. Referring to Fig. 4 of the Kirby reissue patent, I find a tubular standard denoted by the numeral 4a. This arrangement, however, would require either a tight fitting or a stuffing box to prevent leakage. If this feature of the Maus patent could be termed an improvement, it is clear that it is a perfectly self-evident step which would occur to any mechanic, and is the natural and only change that could be made to meet the demand. It does not rise to the dignity of invention. Another difference between the Maus and Kirby structures is that in the Maus construction the supporting structure has a skirt for protecting the motor and its accessories. To supply such element is not the creative work of that inventive faculty which it was the purpose of the Constitution and the patent laws to encourage and reward.

The fact that the claims in issue cannot be read in toto on the Kirby structure does not remove them from the last-named device. I am of the opinion that to sustain these claims would be to sanction a monopoly in that which belongs to the

public, and, therefore, I find and hold the claims in issue invalid.

### 6. Patent No. 1,712,755.

This patent was issued on May 14, 1929, to J. A. Dietenberger, assignor, for a washing machine, on an application filed November 8, 1926. The earliest date alleged for Dietenberger is the filing date. The Dietenberger patent relates to a particular type of oscillating agitator or dolly. The single claim in suit defines the invention as follows: "1. An oscillating agitator for washing machines having an upright body, a circular disk at the lower end of said body and projecting laterally therefrom adapted to fit closely the bottom of the container in which it is used, and angularly spaced radial blades projecting laterally from said body, in combination with slant sided humps rising from said disk."

The agitator of this claim consists of two parts. The principal part is a continuously corrugated disk; the corrugations being V-shaped. It is on this disk that the scrubbing takes place. Another feature of the construction is the radial blades, each of which extends upward from the inner half of the top of one of the corrugations, and these are to give a definite kick outward to the clothes after they have been scrubbed by the corrugated surface of the disk.

The patent thus describes the operation of this dolly (page 2, lines 11 to 33): "In use the tub is supplied with fabrics and liquid sufficient to thoroughly submerge the disk 16 without submerging the part 14. The device works best when a substantial amount of fabrics are present, in which case the upwardly acting agitation caused by the humps 16, 17, 18, together with the radial action caused by the blades 15 causes a slow movement of the clothes or fabrics in the direction of the arrows in Fig. 1. The agitator is oscillated at such a speed that the blades may give a definite kick to the clothes which being held by the mass of clothes outside receive a kind of kneading and rubbing action comparable to that produced by human knuckles and a wash board. Starting with a tub full of soiled fabrics a ring of clean fabrics is soon observed rising along the part 14 and making way for others. Sleeves are often turned inside out in the process and a very thorough washing is always produced, even of such difficult parts as cuffs and collar-bands."

Defendant relies on a number of prior patents to prove invalidity for lack of invention. Among these patents is the one to Fedler, No. 1,613,318, issued on an application filed July 14, 1926. This patent describes an agitator for washing machines, comprising an oscillating disk having a central post rising therefrom, in combination with spaced blade members extending radially from said post to a joint substantially adjacent to the periphery of said disk, and smaller rib members merging with the central post and extending radially a short distance on the disk. This structure is adapted to fit close to the bottom of the container in which it is used. In other words, the Fedler structure differs from that of the patent in suit only in that the radial blades which extend from the lower portion of the post are not slant sided humps. However, patent No. 1,969,176, granted to Kirby on an application filed February 25, 1924, shows in Fig. 12 of the drawings an agitator consisting of a corrugated disk that is in all respects identical with the disk and slant sided humps rising therefrom referred to in the claim in issue herein. What, then, has Dietenberger accomplished? Being familiar with both the Fedler and Kirby patents, as he is charged to be under the law, he modified the Fedler construction by substituting for the blade members 17 the corrugations of the Kirby device. And these corrugations have the same effect in the new location as they had in their old. In making this change there was a lack of that degree of skill and ingenuity which constitutes the essential element of every invention. Thus I conclude, that claim 1 of the patent, the only claim in suit, is invalid for lack of invention.

### 7. Patent No. 1,842,030.

This patent was issued on January 19, 1932, to J. B. Kirby for a laundry machine, on an application filed December 6, 1927. The earliest date alleged for Kirby is some time prior to September 30, 1926. There is only one claim in suit, and plaintiffs rely on claim 8, which reads as follows: "8. In a laundry machine, horizontal top and bottom plates vertically spaced and sheet-metal side-wall members interposed between them and forming two separate compartments, each compartment having at least a part of its side wall conforming to a surface of revolution, and said top plate having independent apertures registering with said compartments, and supporting legs secured to one of said plates, the bottom plate having upon opposite sides continuous marginal portions which are inclined obliquely to each other in the horizontal plane, and the ends of said bottom plate having arcuate portions

substantially concentric with the arcuate portions of said side wall and to which said straight margins are tangent."

This claim defines a 2-compartment washing machine; one compartment being larger than the other. It comprises a base plate and a top plate, each made of one integral piece, and between these plates are disposed the side walls of the two compartments; the top plate being provided with independent apertures registering with said compartments. At least part of the side wall of each compartment must be part of a surface of revolution. All other limitations of the claim flow as a matter of design from the elements of the claims which have been recited in this paragraph. One of these limitations is the provision on the bottom plate of continuous marginal portions which are inclined obliquely to each other in the horizontal plane and the arcuate portions substantially concentric with the arcuate portions of the side wall and to which said straight portions are tangent. This limitation is inherent in the structure because if the two compartments are of different sizes the limitations follow if it is decided to decrease the weight of the bottom plate to a minimum.

Without deciding whether the invention should have been made the subject-matter of a design patent, I hold the claim in issue invalid on practically any one of the prior art patents relied on by the defendant, even though these patents do not disclose double compartment washing machines in which the top and bottom plates are each made of one integral piece. It is well settled in the law of patents that it does not involve invention merely to unite two elements.

### 8. Patent No. 1,927,665.

This patent was issued to J. B. Kirby on September 19, 1933, for a dishwashing machine, on an application filed November 19, 1926. The earliest date claimed by the patentee is September 30, 1926. There is only one claim in issue, claim 8, which reads as follows: "8. In a washing machine a casing having an outlet, a centrifugal pump located outside of said casing and having inlet and outlet ports, the pump-inlet communicating with the casing-outlet, a flexible hose having one end communicating with the pump-outlet and having a bent-over part secured to its free end by a swivel connection, and a valve located in controlling relation to one of said ports, said casing having an opening in its upper part adapted for the reception of said bent-over part."

The machine defined by this claim has a centrifugal pump 59, which maintains a continuous circulation of water through the casing 11 until discharged out through the hose 58. The pump inlet port is connected to the base of the casing 11, and its outlet port to a 2-way connection 91, 92, controlled by a valve 69, whereby the water may be redirected into the casing through a riser 68 or out through the discharge hose 58. The discharge hose has a swiveled gooseneck connection 85 on the free end thereof, adapted to fit into a hollow inlet member 86 communicating with the interior of the tub 11 to return to the latter any fluid inadvertently flowing into the discharge hose 58 when the valve 69 is in the position shown in Fig. 5 of the drawing of the patent, in which the water is recirculated into the tub.

One of the defenses is lack of patentable novelty, defendant relying on a number of prior patents. The Dunham patents No. 1,751,982 and No. 1,785,577, both antedating the patent in suit, meet the claim in issue except that the pipe, which has the gooseneck and swiveled connection, is not flexible. From the record it appears that the only purpose of making the discharge hose 58 of the patent in suit flexible is to enable the operator to extend the hose to a drain that may be at some distance from the dishwashing machine. The question is, therefore, Does it amount to invention to substitute a flexible tube for a rigid one? The answer must be in the negative, particularly in view of the fact that many of the reference patents show flexible tubes. See, for instance, patent No. 1,463,248 to Burleigh et al.

Plaintiffs attempt to differentiate the Dunham patent No. 1,785,577 from the patent in suit, asserting that the notch in the removable cover 83 of the Dunham machine, through which the gooseneck extends, is not the equivalent of the hollow inlet member 86 of the patented construction, losing sight, however, of the fact that, if this were the case, defendant's structure would not infringe the claim even if the latter were valid, because in defendant's 1660 washer drier, defendant's Exhibit 67, the gooseneck hangs over the side of the tub, its end entering the tub itself. Defendant's cover is provided with a raised lip so that the gooseneck can stay hung over the tub while the cover is on, similar to the construction of the Dunham patent No. 1,785,-577. Thus by plaintiffs' own statement defendant's machine does not infringe the

claim in issue. However, in view of what has been stated above, I hold this claim invalid for lack of invention.

Such being my conclusion, it follows that there may be a decree for plaintiffs with one-eighth of the costs because of the conclusion reached as to the Eden patent No. 1,408,896, and as to the remaining patents the bill is dismissed with seven-eighths of the costs to the defendant.

The facts found and the conclusions of law as stated in this opinion are regarded as a. sufficient compliance with the provisions of Equity Rule 70½. Submit decree accordingly, properly consented to as to form.