The APEX ELECTRICAL MANUFACTURING COMPANY, Individually and as Trustee, Plaintiff,

v.

ALTORFER BROS. COMPANY, Defendant.

The APEX ELECTRICAL MANUFACTURING COMPANY, and J. G. De-Remer Research Corp., Plaintiffs,

v.

ALTORFER BROS. COMPANY, Defendant.

Nos. P–1258, P–1259.

United States District Court
S. D. Illinois, N. D.

Jan. 10, 1955.

Richey Watts, Edgerton & McNenny, F. O. Richey, H. F. Schneider and Donald W. Farrington and H. F. McNenny, Cleveland, Ohio, Sours, Newell & Nicol, William C. Nicol, Peoria, Ill., McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett, Isador Grossman, Cleveland, Ohio, for plaintiffs.

Hill, Sherman, Meroni, Gross & Simpson, Carlton Hill, Charles F. Meroni and Donald Simpson, Chicago, Ill., Eugene R. Johnson (of Miller, Westervelt, Johnson & Thomason), Peoria, Ill., for defendant.

ADAIR, District Judge.

The Court finds that:

### Nature of Litigation & Description of Parties.

1. Civil Action No. P–1258 was filed on March 29, 1951, for infringement of two patents of James B. Kirby, No. 1,-969,176, issued August 7, 1934, and No. 2,105,218 issued January 11, 1938, both now expired.

2. The plaintiff, in said suit, the Apex Electrical Manufacturing Company, as Trustee, is a corporation of the State of Ohio and a citizen of the State of Ohio having its principal place of business at Cleveland, Ohio.

3. On March 20, 1952, during the trial and at the conclusion of plaintiff's case (Rec.P. 62), and on motion of the plaintiff, Trustee, Apex Electrical Manufacturing Company, individually, was by order of the Court added as a party plaintiff to Civil Action No. P–1258; such order providing that the addition of this party shall relate back to the date of the filing of the original complaint herein.

4. The defendant in said suit, Altorfer Bros. Company, is a corporation of the State of Illinois and a citizen of the State of Illinois, having its principal place of business at Peoria, Illinois.

5. The aforesaid plaintiff, at the time of filing said suit, alleged that it would rely upon claims 7, 20, 21, 22, 29 and 45 of Kirby Patent No. 1,969,176, and claims 2 and 6 of Kirby Patent No. 2,105,218, which claims were the only claims of said two Kirby patents which were relied upon by the plaintiff during the trial of this suit.

6. Civil Action No. P–1259 was filed on March 29, 1951, for infringement of the Motycka Patent No. 2,033,146, issued March 10, 1936, and the TePas Patent No. 2,060,454, issued November 10, 1936, both now expired.

7. The plaintiffs in said suit, Civil Action No. P–1259, are the Apex Electrical Manufacturing Company, a corporation of the State of Ohio and a citizen of the State of Ohio having its principal place of business at Cleveland, Ohio, (the same corporation which sued as Trustee in Civil Action No. P–1258), and J. G. DeRemer Research Corp., a corporation of the State of New Jersey and a citizen of the State of New Jersey having its principal place of business at Union City, New Jersey.

8. The defendant in said suit, Civil Action No. P–1259, is the same as the defendant in Civil Action No. P–1258.

9. The aforesaid plaintiffs, at the time of filing said suit, alleged that they would rely upon claims 15, 16 and 17 of the Motycka Patent No. 2,033,146 and claims 1 and 2 of the TePas Patent No. 2,060,454, which claims were the only claims of said patents which were relied

upon by the plaintiffs during the trial of this suit.

10. On motion of the defendant in the aforesaid suits, and prior to the filing of the answer, the two causes of action were consolidated by Court Order for purposes of trial.

11. The defendant, Altorfer Bros. Company, in both of said suits filed with its answers, counterclaims charging violation of the United States Anti-Trust and Anti-Monopoly Laws, 15 U.S.C.A. §§ 1 and 2, c. 647, §§ 1 and 2, 26 Stat. 209, and alleging misuse of the patents sued on and which alleged misuse was also relied upon as a defense to the suits for patent infringement.

12. Pursuant to the same aforesaid motion of plaintiffs, entered by the Court, adding the Apex Electrical Manufacturing Company, individually, as a party plaintiff to Civil Action No. P–1258, the Apex Electrical Manufacturing Company, individually, was added as a cross-defendant to the counterclaim filed by Altorfer Bros. Company with the provision that such addition should relate back to the filing of the original counterclaims herein.

13. In both suits, the aforesaid patents in suit are owned by plaintiffs as alleged in the complaints herein and the Court has jurisdiction of the parties and the subject matter.

### Misuse of Patents & Violation of Anti-Trust Laws.

14. The Apex Electrical Manufacturing Company acquired ownership in or control of a large number of patents relating to automatic washing machines. It then collectively asserted them against the washing machine industry in a manner such as to take advantage of the greater monopolistic collective force of said patents over the separate monopolies of each of them. It licensed the major companies in the washing machine field and in so doing required recognition by them of certain of plaintiffs' patents as a consideration for licenses under other patents by block booking license provisions. It employed the granting of licenses under such patents as a condition and leverage to require the granting to it of licenses under other and unrelated patents, such as those relating to ironing machines. It granted licenses restraining the parties thereto and their sub-licensees from manufacturing and giving to the public the benefit of unpatented washing machine structures, including spiral agitators, long part of the prior art and public domain.

15. The license agreement (Def. Ex. 88) dated September 11, 1941 with Easy Washing Machine Corporation, (which license agreement, in articles 16 and 17, granted Easy Washing Machine Corporation a license under Kirby Patent No. 1,969,176 here in suit), contains illegal covenants in restraining of trade, whereby the public was deprived of the competition of said Easy Washing Machine Corporation and the Apex Electrical Manufacturing Company and their respective sub-licensees insofar as certain unpatented spiral bladed washing machine agitators were concerned, which had long been part of the public domain. This was accomplished through the inclusion therein of articles 8 and 9 thereof.

16. The use and existence of washing machine spiral bladed agitators, such as Easy Washing Machine Corporation and the Apex Electrical Manufacturing Company agreed respectively not to make and sell, were long old in the expired patented art such as German Patent No. 275,342 of June 15, 1914; United States Letters Patent to Schultz 26,790, granted June 10, 1860; and United States Letters Patent to Hunt No. 85,447, granted December 29, 1868.

17. The Apex Electrical Manufacturing Company, by virtue of the aforesaid license agreement (Def. Ex. 88), wrongfully removed Easy Washing Machine Corporation and itself and their sub-licensees from competition with each other as to unpatented types of agitators and washing machines.

18. At the time of the filing of this litigation on March 29, 1951, said Kirby Patent No. 1,969,176 here in suit was in full force and effect and the aforesaid license (Def. Ex. 88) licensing said Kirby patent was then in full force and effect, and there has been no showing herein of any effort to dissipate the wrongful effects of the misuse of patents.

19. A patent infringement suit was brought against General Motors Corporation by the Apex Electrical Manufacturing Company, both individually and as Trustee, during the pendency of which a draft of a proposed license agreement was tendered to General Motors Corporation (Def. Ex. 0–0) wherein spaces were left for the insertion of three patents, thereby indicating that, as a prerequisite for the license, General Motors Corporation would have to take a license under at least three patents of plaintiff, the Apex Electrical Manufacturing Company.

20. During the pendency of this suit, the plaintiff, the Apex Electrical Manufacturing Company, consummated a license agreement with General Motors Corporation, dated December 31, 1951 (Pl. Exs. 54–54A), including Kirby Patent No. 1,969,176 here in suit, and employed the granting of that license as a means of having General Motors Corporation also take a license under the Te-Pas Patent No. 2,060,454 here in suit, (allegedly owned by the Apex Electrical Manufacturing Company, individually, and not by the Trustee); and that similar licenses were also previously granted to the Maytag Company of Newton, Iowa (Pl. Exs. 53–53A).

21. In other instances of the granting of licenses the prospective licensee, such, for illustration, as Nineteen Hundred Corporation, now known as Whirlpool Corporation of St. Joseph, Michigan; Sears, Roebuck & Company of Chicago, Illinois, and Solar Corporation, of Milwaukee, Wisconsin, although requesting a license under less than three patents owned by the Apex Electrical Manufacturing Company, were required to take a license under unwanted patents, so as to conform with the established patent pooling plan of granting licenses only under three patents at a rate of $0.60 per machine.

22. In the case of General Electric Company, a license was granted by the plaintiff, the Apex Electrical Manufacturing Company, on February 26, 1939, at a lesser rate of royalty, namely, at $0.50 per machine, because General Electric Company was only interested in the use of the water recirculatory feature of the Kirby Patent No. 1,969,176, but, nevertheless, the licensee was required to recognize and take a license under two additional unrelated Kirby patents.

23. The entire pattern of the licensing program of the plaintiff, the Apex Electrical Manufacturing Company, was directed to the end of saddling the principal manufacturers of washing machines in the industry with unwanted licenses by tie-in and "block booking" license provisions with the end result that each licensee was not enabled to acquire a license without recognizing the validity of at least three patents of plaintiff and of having to pay tribute under unwanted patents to the detriment of the public and contrary to the Anti-Trust Laws of the United States.

24. The allegations of Civil Action No. P–1259 establish that the plaintiff (the Apex Electrical Manufacturing Company), had obtained and pooled with its own patents and those of Kirby, the exclusive patent rights of other companies, such, for example, as those of plaintiff, J. G. DeRemer Research Corp.; and the numerous other patents and patent rights obtained by the Apex Electrical Manufacturing Company as a part of its licensing program (including those obtained from the Easy Washing Machine Corporation in the aforesaid license to that concern), establishes a substantial pooling of patents in one entity, relating to washing machines, to the end of monopolizing the field of automatic washing machines.

25. In the case of the Apex Electrical Manufacturing Co. v. Landers, Frary & Clark, 21 F.Supp. 241, affirmed at 100 F.2d 1009, claim 29 of Kirby reissue Patent No. 18,280 was adjudged invalid and such invalid claim was thereafter disclaimed pursuant to the Statute. Claim 29 of Kirby Patent No. 1,969,176 here in suit, is substantially identical to said adjudicated invalid claim and likewise should have been disclaimed. Nevertheless, as a part of the plaintiff's licensing program, the plaintiff (the Apex Electrical Manufacturing Company) included in the aforesaid license agreements licenses under such claim 29 of Kirby Patent No. 1,969,176.

26. The Apex Electrical Manufacturing Company burdened the public, through the means of its aforesaid licenses, with combination claims of Kirby Patent No. 1,969,176 involving the same old combinations as was conceded by Kirby in the United States Patent Office to be unpatentable to him (such as, for illustration, in amended original Count 8 of Interference No. 57,564, which in the United States Patent Office was sworn to be unpatentable by Kirby's counsel).

### Invalidity of Patents in Suit.

27. Claims 7, 20, 21, 22, 29 and 45 of Kirby Patent No. 1,969,176 here in suit do not define any new washing machine combination, as the elements of the combinations have all been shown to have been old in the art and unpatentable, and the elements of each combination as claimed do not coact with each other in any new or unobvious way, but function together in the usual and expected manner for the attainment of old and obvious washing and drying results.

28. The long drawn out Patent Office proceedings including interferences involving the application from which Kirby Patent No. 1,969,176 issued reveal repeated cancellations and dedications to the public of claims directed to the same combinations now expressed in the claims of the Kirby patent in suit.

29. Plaintiffs' assertion of its Kirby Patent No. 1,969,176, which contains 106 claims, against washing machine manufacturers including the defendant was wrongful and not in good faith as the interpretations advocated by plaintiffs for the claims of such Kirby patent, such as those here in suit, constitute an attempt to recapture combination subject matter dedicated to the public during the lengthy prosecution of the Kirby application in the Patent Office; and hence the claims of the Kirby patent in suit are invalid.

30. The only machine offered in evidence by plaintiffs as having been made like that illustrated in any of the four patents of plaintiffs in suit was a machine which had been thrown from a second story window of plaintiffs' factory as scrap. It was thereafter salvaged by patentee Kirby and by him placed unprotected under a tree at his home. It was introduced in evidence as Plaintiffs' Exhibits 97–98.

31. Plaintiffs rely heavily on the so-called doctrine of commercial success in urging validity of the patents in suit. Plaintiffs' failure to offer in evidence the testimony of a single representative of the large companies that were licensees as to the merits of the licensed subject matter and the extent of operation under the licenses raises the presumption that if such testimony had been offered it would have been adverse to plaintiffs.

32. It has long been old in the washing machine art to interchange, as desired, the elements of different well known types of washing machines, and to substitute one well known type of washing element for another, or to substitute one well known type of extractor for another, without the use of anything more than ordinary mechanical skill. Patentee Kirby in his earlier Patent No. 1,277,603 of 1918 recognized that vari-

ous washing machine elements could be replaced by other well known forms of elements within the scope of the teaching of that patent.

33. The claims of the Kirby Patent No. 1,969,176 are devoid of patentability over the prior patented art such, for example, as is exemplified by McAllister U. S. Patent No. 608,788; Macumber U. S. Patent 66,241; Negrescou U. S. Patent 1,244,120; Kirby U. S. Patent 1,277,603; Waller U. S. Patent 1,480,646; German Patent 275,342 of 1914; and especially in view of French Patent 363,515 of 1906; Covel U. S. Patent 74,052 and Snyder Patent 1,506,783.

34. The claims of all four patents in suit are not concise as required by Statute, are vague and indefinite and are also mere aggregation.

35. Claims 2 and 6 of Kirby Patent 2,105,218 are unpatentable over the prior patented art set forth by the defendant herein and including such patents as the Avery Patent 4,850 of 1846, Hause Patent 413,508 of 1889, Persanowsky Patent 431,821 of 1890, Hogan Patents Nos. 1,533,690 and 1,533,691, and Hoff Patents Nos. 1,334,096 and 1,334,097.

36. Claims 15, 16 and 17 of the Motycka Patent No. 2,033,146 are not patentable over the old prior patented art of extractors, such, for example, as is evidenced by the Bryson Patent No. 1,507,412 of September 2, 1924, the Robertson Patent No. 978,060 of December 6, 1910, the Shears Patent No. 255,685 of March 28, 1882, the Shorey Patent No. 288,129 of November 6, 1883 and the Cairns Patent No. 198,346 of December 18, 1877.

37. It has long been old in the washing machine and extractor art to use safety devices which will occasion an arresting of the motion of the extractor or centrifugal basket when the cover over the basket is opened.

38. E. J. TePas, now deceased, was the attorney for James B. Kirby, the latter of whom was granted Kirby Patent No. 1,842,030 dated January 19, 1932 which patent was referred to in the text of the TePas Patent No. 2,060,454. This Kirby patent shows a safety mechanism which is effective to occasion arresting of the motion of the centrifugal basket when the cover over the basket is in an open position. This Kirby patent also shows an additional or supplemental means independent of the cover operable by the handle for, turning on and off the driving mechanism for the centrifugal basket.

39. The record further shows that the disclosure in this Kirby Patent No. 1,842,030 involves a washing machine with a safety device similar to that shown in another Kirby Patent No. 1,969,178, claims of which, on the safety mechanism, were held invalid in the aforesaid suit entitled the Apex Electrical Manufacturing Co. v. Landers, Frary & Clark, 21 F.Supp. 241, affirmed at 100 F.2d 1009.

40. Claims 1 and 2 of the TePas Patent No. 2,060,454 in suit are directed to an old catalogue or aggregation of elements in an extractor, such as that shown in the earlier Kirby Patents Nos. 1,842,030 and 1,969,178, and do not define any novel interrelation between the elements such as to give rise to a new, patentable combination.

41. The two claims of the TePas Patent No. 2,060,454 are devoid of patentability over Baxter Patent No. 981,833; Balzer Patent No. 1,236,529 (Def. Ex. 101); Schaum Patent No. 1,766,310; Wilcox et al. Patent No. 924,864; Kirby Patent No. 1,969,178; and Defibaugh Patents Nos. 1,803,382, 1,803,383, and 1,882,123, owned by the defendant, and all of which teach the idea of safety controls interrelated with an extractor basket cover for controlling the rotation of the extractor basket as a function of the manipulation of the cover for the basket.

42. The supplemental or additional means recited in the last clause of each of claims 1 and 2 of the TePas Patent No. 2,060,454 is so broadly defined that such means would cover a mere elec-

**158**

trical plug adapted to be inserted in or removed from a wall socket for stopping or starting the motion of a washing machine. Hence, the inclusion of such means in each of said claims does not lend or add anything patentable to the claims.

### Non-Infringement.

43. When claims 7,.20, 21, 22, 29 and 45 of the Kirby Patent No. 1,969,176 are interpreted in the light of the specification of the Kirby patent, each includes a washing machine structure which is entirely different from the defendant's "A–B–C" washing machines here in suit wherein no oscillating or back and forth agitator is used and wherein the parts of the "A–B–C" machine do not cooperate or operate in the manner disclosed and intended by Kirby in his patent.

44. Defendant's washing machines here in suit do not have any of the respective combination of elements specified by claims 7, 20, 21, 22, 29 and 45 of the Kirby Patent No. 1,969,176 and said machines do not infringe said claims.

45. When claims 2 and 6 of the Kirby Patent No. 2,105,218 are interpreted in the light of the specification of the patent, it is apparent that they are directed to a different type of agitator structure than is present in the defendant's "A–B–C" washing machine, which uses an agitator that does not have both bodily movement and rotational movement about a common axis within the meaning of the disclosure of the Kirby patent.

46. Defendant's washing machines here in suit do not have any of the respective combination of elements specified by claims 2 and 6 of the Kirby Patent No. 2,105,218 and said machines do not infringe said claims.

47. The defendant's "A–B–C" washing machines in suit with baskets supported from below do not have a basket depending from a top support, and do not involve any stabilizing action such as contemplated by the Motycka Patent No.

2,033,146 and hence do not respond to the language of claims 15, 16 and 17 of the Motycka patent.

48. During the prosecution of the application from which the Motycka Patent No. 2,033,146 issued, Motycka attempted to distinguish his claims from the prior patented art by pointing out that the prior patented art, involving centrifugal baskets that were bottom supported, did not accomplish the same result as in the top supported basket of his Patent No. 2,033,146 here in suit, and this estops him from now urging a contrary interpretation for his claims in the attempted application of them to the defendant's "A–B–C" machines, wherein the basket is bottom supported.

49. Defendant's washing machines here in suit do not have any of the respective combination of elements specified by claims 15, 16 and 17 of the Motycka Patent No. 2,033,146 and said machines do not infringe said claims.

50. The defendant's "A–B–C" washing machines here in suit do not satisfy the requirements of claims 1 and 2 of the TePas patent, since the defendant's machines do not have operative connections between the cover of the machine and clutch means for connecting and disconnecting the container or centrifugal basket to and from the power means. Defendant's machines merely make use of a rod which operates an electric switch for opening and closing the motor circuit.

51. Defendant's washing machines here in suit do not have any of the respective combination of elements specified by claims 1 and 2 of the TePas Patent No. 2,060,454 and said machines do not infringe said claims.

### Conclusions of Law.

1. The Court has jurisdiction of the parties and the subject matter.

2. In Civil Action No. P–1258, the claims of Kirby Patents Nos. 1,969,176 and 2,105,218 in suit are invalid as being devoid of any invention over the prior patented art.

3. The defendant has not infringed and does not infringe said Kirby Patents Nos. 1,969,176 and 2,105,218 in its manufacture and sale of its washing machines here in suit.

4. In Civil Action No. P–1259, the claims of Motycka Patent No. 2,033,146 and the TePas Patent No. 2,060,454 in suit are invalid as being devoid of any invention over the prior patented art.

5. The defendant has not infringed and does not infringe said Motycka Patent No. 2,033,146 and said TePas Patent No. 2,060,454 in its manufacture and sale of its washing machines here in suit.

6. Kirby Patent No. 1,969,176 is invalid for failure of the plaintiffs to file a statutory disclaimer under R.S. § 4917 and R.S. § 4922.[1]

7. The defendant has sustained its burden in its counterclaims herein and as a part thereof has established the invalidity of the four patents involved in these two suits.

8. The plaintiffs have misused their patents in their licensing program by the use of illegal covenants in restraint of trade, by block-booking of patents, and by wrongful pooling and monopoly of patents, contrary to the Anti-Trust and Anti-Monopoly Laws of the United States, 15 U.S.C.A. §§ 1 and 2.

9. The plaintiffs are legally barred from asserting their patents, since the effects of the violations of the Anti-Trust Laws herein complained of, and established by the defendant, have not been shown to have been dissipated.

10. That, as a result of plaintiffs' misuse of its patents and plaintiffs' violations of the Anti-Trust Laws, defendant has suffered damages in being obliged to defend these suits and in being obliged to compete in an unlawfully restricted market.