KULP et al. v. BRIDGEPORT HARDWARE MFG. CORPORATION.

District Court, D. Connecticut. April 29, 1927.

No. 1863.

1. Patents ⬦328—1,330,542, claims 1–4 for a valve spring lifter, held valid and infringed.

Kulp patent, No. 1,330,542, claims 1–4, for a valve spring lifter for use in internal combustion motors, *held* not anticipated, valid, and infringed.

2. Patents ⬦41—Invention is not negatived by prior art structure, which might be modified to that of patent, unless the modification is suggested and how to make it disclosed.

To negative invention in a novel combination, it is necessary to find in the prior art, not merely a construction which might be modified to make the patented device, but a suggestion, not only that the modification should be made, but also how to make it.

3. Patents ⬦46—Useful combination, not before made nor claimed, is patentable.

If no one before had made and claimed the same combination, and it is useful, it is patentable.

In Equity. Suit by Harry W. Kulp and another against the Bridgeport Hardware Manufacturing Corporation. Decree for complainants.

Richard E. Babcock, of Washington, D. D., and T. Clay Lindsey, of Hartford, Conn., for plaintiffs.

A. M. Wooster and M. W. Davis, both of Bridgeport, Conn., for defendant.

THOMAS, District Judge. This is the usual patent suit, with the usual defenses of invalidity and noninfringement, and has for

its predicate patent No. 1,330,542, issued February 10, 1920, to Harry W. Kulp, who, on July 23, 1926, duly assigned an undivided one-half interest in the same to Martin C. Dellinger, one of the plaintiffs.

[1] The patent in suit describes a valve spring lifter, which is a tool adapted for use in compressing and lifting the springs surrounding valve stems, which are used in an internal combustion motor, so as to enable the springs to be detached from the valve stems preparatory to the removal of the valves. To perform this operation it is necessary to compress the valve spring, in order to release the vigorous tension of the spring upon the key or other removable device which holds the spring in place around the valve stem. Tools of this type were old and well known many years prior to the filing date of the application which resulted in the patent in suit. They were called valve spring lifters, or valve spring removers, and consisted of two jaw-carrying levers pivoted together and having the movement of ordinary pliers, so that the lower jaw rested on a fixed base, while the upper jaw bore against the lower end of the valve spring, and when compressed by the hand moved the spring upward. In others, the jaws were so constructed as to bear upon the upper and lower ends of the spring, which compressed it when the jaws were moved toward each other. Various difficulties were encountered with such devices, and none of them seemed to be the ideal tool for compressing the spring, in order to remove the locking key or spring-retaining device for the purpose of taking out the valve of the engine.

The most important advantage of the invention described in the patent in suit over the prior art lies in the fact that the tool is adapted so as to be operated by one hand, and its jaws are always maintained substantially parallel to each other at all stages in either the lifting or lowering operation with the result that:

(1) The washer or cup, applied to the lower end of the spring upon the valve stem, cannot tilt or cant, whereby the washer or cup cannot bind upon or grip the valve stem and carry with it the latter.

(2) The tool is not liable to slip or "kick out of position," thus eliminating the danger of accident to the fingers or knuckles of the operator when compressing the spring, removing the cross-key, and detaching the valve.

(3) There is a saving of time of me-chanics employed in taking out valve stems in order to grind the valves.

(4) The cross-key, which must be removed, is easier of access.

(5) There is greater efficiency in the application of the leverage by the use of the hand.

Claims 1, 2, 3, and 4 are in suit and they provide for:

"1. A valve-spring lifting tool, comprising a pair of levers pivoted together, jaws pivoted horizontally on the said levers for vertical movement, and means for turning the said jaws on their pivotes to compensate for the changing position of the levers and keep said jaws parallel to each other.

"2. A valve-spring lifting tool, comprising a pair of levers pivoted together and a pair of jaws, each of which is pivoted on one of said levers and provided with a tail extending rearwardly and obliquely, and pivoted to the other lever to provide for moving the jaws on their forward pivots, so as to compensate for the changing positions of the levers and maintain parallelism of the jaws.

"3. The combination of a pair of pivoted levers with jaws adapted to straddle a valve stem and pivoted on the forward ends of said levers, these jaws being provided with rearwardly extending crossing tails, each of which has pivotal connection with the lever opposite that which carries said jaw.

"4. A valve-spring lifting tool, comprising two levers pivoted together, a pair of jaws pivoted on the ends of such levers, a tail rigid with each of said jaws, and each of which tails extends from one of said jaws to the opposite lever and is pivotally attached thereto by means permitting slight play at this point."

Referring to the specification it appears that the valve-spring lifter defined by these claims comprises a pair of levers, $A$ and $A'$, which are pivoted together at $a$, intermediate their ends. To the forward ends of these levers are pivoted at $b$ and $b'$ two jaws, $B$ and $B'$. The jaw $B$, which is pivoted to the end of the lever $A$, has a tail $C$ rigid and preferably integral therewith and extending obliquely across to the lever $A'$ at a point between the pivot $a$ and the handle end of the tool. The end of the tail is there connected to the lever $A'$ by a pin $D$, which enters a groove $d$ in the lever $A'$. In like manner, the jaw $B'$, pivoted to the end of the lever $A'$, has a similar tail $C'$, extending rearwardly obliquely across to the lever $A$ at a point corresponding to that reached by

the tail $C$, and being attached to the lever $A$ by a pin and groove connection. The tails $C$ and $C'$ cross each other, the arrangement of the elements of the tool being such that the opening of the handle end of the tool moves the jaws toward each other, and the closing of the handle ends spreads the jaws apart; but in every position the pull or push of the cross-tails $C$ and $C'$ on the jaws $B$ and $B'$ turns them on their pivots, so as to compensate for the changing inclination of the forward ends of the levers and keeps the jaws always parallel to each other.

It is also due to the arrangement described that the tool is capable of being actuated by one hand of the operator, leaving the other hand free for disengaging or engaging, as the case may be, the cross-key from or with the valve stem, and the operator may do this without risk of bruising his fingers or knuckles.

It appears from the record that in 1918 and early in 1919 the defendant manufactured a valve-spring lifter of the "Fay" type, exemplified by Defendant's Exhibit G. In this valve lifter the jaws do not move in parallel relation to one another. Some time in 1925 the defendant commenced making valve lifters of the type of Plaintiffs' Exhibit 3, known in the trade as "Bull Pup No. 24," which is practically a Chinese copy of the tool disclosed in the patent in suit. There is a locking device embodied in Plaintiffs' Exhibit 3, not shown in the patent in suit, but this addition in no way affects the issue here. It appears from the record that defendant received some complaints to the effect that the "Fay" type of valve lifter slipped in operation, and later on one of the defendant's salesmen suggested that a valve lifter with parallel jaws be manufactured. This was after plaintiffs' devices had been on the market and fairly well advertised. Defendant's experimental department was thereupon put to work to design a valve-lifting tool wherein the jaws would be parallel to each other during the valve compressing operation. Defendant's employees Hobbs and Anderson, both men of long manufacturing experience, made a number of different devices, not lesss than eight, before they developed Plaintiffs' Exhibit 3, defendant's device. The manufacture of this device, however, was discontinued by defendant after the patent in suit was called to its attention. Thereafter defendant developed the device represented by Plaintiffs' Exhibit 4, which differs from Plaintiffs' Exhibit 3 only in that the tails of the jaws of the tool are each made of two sections pivoted together and fulcrumed to the handles of the tool. Defendant claims that this tool is not an infringement of the claims of the patent in suit.

The defense is that the inventor Kulp was not the original and first inventor or discoverer of any material or substantial part of the thing patented, and that the tool represented by Plaintiffs' Exhibit 4 does not infringe the claims relied on in this suit. Defendant has cited in its answer 27 prior patents, but reference will be made in detail to only such as were relied upon at trial and argument.

During the prosecution of the application which resulted in the patent in suit, the Patent Office cited the patent to North, granted July 28, 1914, No. 1,105,096; the patent to Kraemer, No. 1,147,804, granted July 27, 1915; the Palmer patent No. 1,301,733, granted April 22, 1919; and British patent to Lake, No. 2,965 of 1909.

The North and Kraemer patents show structures in which the jaws do not open with a parallel movement, but the Palmer and Lake patents disclose structures in which the jaws do open with a parallel movement. It appears, however, that the two latter structures are not "one-hand" tools, nor do the patents in which they are described suggest a combination of their devices with others—e. g., with those of the other two patents—to bring about a one-hand tool, nor do they contemplate the provision of such a tool. I believe that invention of a high order would be necessary to so reconstruct the Palmer and Lake constructions, or to rearrange their elements, as to produce a one-hand tool. On the other hand, the examiners of the Patent Office had before them these four patents, and the claims of the application which resulted in the patent in suit were changed and amended in view of these references. The claims, as they now stand, do not read on the devices disclosed in the four references, and no such error has been pointed out on the part of the Patent Office as would render the claims invalid in view of these four references.

Defendant argues that pliers having a parallel jaw movement have been manufactured by it and others many years before the application was filed which resulted in the patent in suit. It is to be noted, however, that in these pliers the jaws move toward each other—that is to say, toward gripping position—when the handles thereof move toward one another. If, therefore, the jaws of these pliers were modified in accordance with prior valve-lifting tool patents, so that

they would co-operate with the valve stem and the valve spring in the same manner as the jaws of the patent in suit operate, the tool so obtained could not be held to be an anticipation of the claims relied upon because both hands of the operator would be necessary in order to compress the valve spring. To meet this, defendant has introduced Defendant's Exhibit 2, which is a modified parallel jaw plier manufactured under the patent to Bernard, No. 427,220 of May 6, 1890. These pliers were modified by bending the handle portions so as to cross each other. In this way parallel jaw pliers were obtained in which the jaws recede when the handles move toward each other, and this tool is obviously adapted to be manipulated by one hand of the operator.

[2] Taking it for granted that it would not amount to invention to provide these modified pliers with jaws of the design disclosed in the patent in suit, it must still be held that, in order to negative invention in a novel combination, it is necessary to find in the prior art, not merely a construction which might be modified to make the device at bar, but somewhere a suggestion, not only that the modification should be made, but how to make it. I find nothing in the Bernard patent, nor in the other patents relied upon, which would even remotely suggest a one-hand spring-lifting tool, the jaws of which open with a parallel movement upon moving the handle portions toward one another. The same conclusion obviously applies to all of the parallel jaw pliers patents on which the defense relies.

The Barney patent, No. 717,526, seems to have no bearing at all upon the issue, because the jaws of the tool described therein do not have a parallel movement. Much stress is laid by the defense upon the patent to Case, 365,432, which describes a glove stretcher. This device was never intended to and cannot possibly be used to compress the valve springs of an internal combustion motor. It comes from a widely different, non-analogous art, and its jaws are not intended to compress an element upon moving its handle portions toward one another, but, on the contrary, to expand an element. I am unable to find in this patent in suit any contemplation, or in fact any suggestion, of the differentiating feature relied upon by defendant, to wit, the compression of a valve spring by parallel movement jaws upon forcing the handle portions of the tool toward one another. I also fail to see where the suggestion for combining this patent with any one of the other patents relied upon comes from, without the present disclosure of the patent in suit before us. The same conclusion applies to the Anderson patent, No. 559,763.

[3] It is unnecessary, as I view them, to go into an analysis and discussion of the other patents cited. It is sufficient to say that Kulp was the first to so construct a valve lifter in which, upon moving with one hand the handle portions thereof toward each other, the jaws recede in parallel relation to one another, so that slipping of the tool is prevented. The claims in suit set forth a combination and arrangement of elements not disclosed by the patents relied upon, taken either singly or combined, and it is therefore entirely immaterial, with regard to the validity of this patent, whether all or some of the elements were old, or whether any of them were new. If no one before this inventor had made this combination and claimed this arrangement of parts, and the combination is useful, then it is a patentable device. Parks v. Booth, 102 U. S. 96, 26 L. Ed. 54; Railroad Supply Co. v. Hart Steel Co. (C. C. A.) 222 F. 261; H. Ward Leonard, Inc., v. Maxwell Motor Sales Co. (C. C. A.) 252 F. 584, 593. I do not find in the testimony in this case the combination and arrangement of the parts or elements defined by the claims.

As to the question of infringement, it was practically admitted by defendant that the tool represented by Plaintiffs' Exhibit No. 3, "Bull Pup No. 24," first form, infringes claims 1 to 4, inclusive, of the patent in suit. I find that this tool is an exact copy, element for element, of the tool described in the specification and set forth in claims 1 to 4, inclusive, of the patent in suit. It embodies jaw for jaw, lever for lever, pivot pin for pivot pin, and groove for groove of the device disclosed in the patent. It clearly infringes all four of the claims.

As to the tool represented by Plaintiffs' Exhibit 4, it is to be noted that its tails are each made of two sections pivoted together and to one of the handle portions of the tool. One section of each jaw may be termed a "link." This link takes the place of the slotted connection disclosed in the patent in suit. It is a mechanical equivalent of the slotted connection, even on the testimony of defendant's expert. In Plaintiffs' Exhibit 4, the defendant's device, the links perform the same service or produce the same result in substantially the same way as the grooved connection of the patent in suit. In view of this, it must be held that the device represented by Plaintiffs' Exhibit

4 infringes all of the claims in suit. Werner v. King, 96 U. S. 218, 24 L. Ed. 613; Kokoma Fence Mach. Co. v. Kitselman, 189 U. S. 8, 23 S. Ct. 521, 47 L. Ed. 689.

There may be a decree for the plaintiff, with costs to abide the event.