## APEX ELECTRICAL MFG. CO. v. MAYTAG CO. et al. (two cases).

### Nos. 7393, 7394.

Circuit Court of Appeals, Seventh Circuit.

June 17, 1941.

Rehearing Denied Sept. 11, 1941.

---

184

F. O. Richey and H. F. McNenny, both of Cleveland, Ohio, Harry W. Lindsey, Jr., and Davis, Lindsey, Smith & Shonts, all of Chicago, Ill., and Richey & Watts, of Cleveland, Ohio, for plaintiff.

Wallace R. Lane, Carl F. Geppert, and Benton Baker, all of Chicago, Ill., for defendants.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

Plaintiff charged defendants with infringement of its United States Patent No. 1,408,869 to Eden, issued March 7, 1922, upon an application filed August 13, 1917. It was assigned to plaintiff on April 18, 1934. The invention relates more particularly to an adjustably mounted power driven wringer mechanism for use in combination with a washing machine.

In the same complaint plaintiff charged defendants with infringement of United States Patent, No. 1,325,234, to Couch and Wallace, issued December 16, 1919, on an application filed January 21, 1918. This patent was assigned to plaintiff on February 17, 1934, and likewise relates to an adjustably mounted power driven wringer mechanism for use in combination with a washing machine.

In the same complaint plaintiff charged defendants with infringement of United States Re-issue Patent No. 19,217, to plaintiff as assignee. The original patent No. 1,753,964 was issued to Prachar April 8, 1930, on an application filed January 16, 1926. The patent was re-issued June 19, 1934, on an application filed by plaintiff on January 8, 1934. This patent relates to ironing machines.

The defendants, by a joint and several answer, interposed the defenses of laches, invalidity and non-infringement. The court decreed the asserted claims of the Eden patent valid and infringed, and defendants appeal from this ruling. Also, the court

awarded no injunctive relief, because the patent had expired on March 7, 1939. There is no appeal from this part of the decree. In the same decree the court held the asserted claims of the Couch and Wallace, and the Prachar patents invalid. From this part of the decree the plaintiff has cross-appealed, and by agreement one record was filed and the cases were consolidated for hearing.

Claims 3, 5, 8, 9, 10 and 11 of the Eden patent are in issue, and claim 8 is typical.[1]

The Eden patent was in issue in Apex Electrical Mfg. Co. v. Landers, Frary and Clark, D.C., 21 F.Supp. 241. Claims 8, 9, 10 and 11 were relied upon and held valid and infringed. The court further held that the defense of laches and estoppel must fail. A sufficient description of the patent, and the reasons for the rulings are set forth in that opinion, and it is not necessary to repeat them here.

With respect to validity, defendants here contend that the court in the Landers case was confused in the application of the rules of law pertaining to patentable novelty and invention. In this respect they note that the court in the Landers case relied upon its earlier decision of Kulp v. Bridgeport Corp., D.C., 19 F.2d 659, 662, in support of its holding that it is not permissible to combine prior art patents of a foreign art with the washing machine patents so as to bring about the invention in issue. There the court said: "* * * to negative invention in a novel combination, it is necessary to find in the prior art, not merely a construction which might be modified to make the device at bar, but somewhere a suggestion, not only that the modification should be made, but how to make it." This language was quoted in the Landers case, and the court there said: "Defendant admits that nowhere can a suggestion be found that the modification of the patentee should be made. In other words, no one but this inventor had made this combination and the arrangement of his parts. Therefore, inasmuch as I find the combination useful, I hold it to be patentable over the prior art." [21 F.Supp. 244.]

Defendants' contention is that the language in the Landers case contradicts the well-known principle that the exercise of mere mechanical skill in assembling old elements, which produces no new result, is a mere aggregation and does not amount to invention. It must be noted, however, that the court in the Landers case was applying the law to the facts as it had found them to be. These differed materially from those stated in the principle upon which defendants base this contention. That court not only found that plaintiff's combination was novel, but it found that it produced a new result which was useful, and that more than mere mechanical skill was involved. It is obvious that under these facts the statement of the court did no violence to the principle relied upon by the defendants, and we think this contention is without merit.

It is further contended by defendants that the asserted claims of Eden fail to disclose any invention or patentable novelty over the prior art. The Patent Office found to the contrary, and District Judge Thomas of the Second Circuit held likewise as to all claims here involved, except 3 and 5. The defendants, however, urge that he gave no consideration to the prior art in interpreting the claims. This conclusion does not seem to be well founded, for he specifically stated that no one but Eden had made his combination and his arrangement of the parts prior to Eden's disclosures.

Defendants further urge that much more prior art was cited to Judge Baltzell in this case than was considered by either the Patent Office or Judge Thomas. This may be conceded, but this record discloses that defendants' expert again admitted that none of the cited art solved the problem which Eden solved, or performed the function which Eden performs. In this case defendants rely to a great extent on Lyche, No. 1,209,981; Wappat, No. 1,217,540; and Mammen, No. 1,384,267. These with all the other cited art and testimony were considered by Judge Baltzell, and his conclusions with respect to this contention coincide with those of the Commissioner and Judge Thomas. Of course, our decision

[1] "In a device of the character described, the combination with a wringer pivoted about a vertical axis, and a driving member concentric with said axis, for operating the same, of means for making and breaking the operative connection between said member and wringer, means for locking said wringer in fixed position relatively to said vertical axis, and means preventing the making of operative connections between said member and wringer except when said wringer is locked."

186

should not be, and it is not based alone on this coincidence of opinion. However, the record in this case and the opinion in the Landers case are quite convincing that both cases were well tried and thoroughly considered, and the conclusions reached certainly add considerable support to the presumption of validity which attaches to the patent. Moreover, we have considered all the art that has been cited, and we are convinced that none of it, nor all of it, solved the problem which Eden solved, or performed the function which his device performed. This was the conclusion reached by defendants' expert, and we think the evidence abundantly supports it. That Eden's disclosure was the result of more than mere mechanical skill, and was a patentable invention, we have no doubt, and further discussion, other than what was said in the Landers case, would seem to be unnecessary.

However, it is stated by defendants that the only feature of any of the asserted claims of the Eden patent which affords any basis of novelty is stated in functional language, hence they contend that each claim is invalid for that reason. The precise question with respect to claims 8, 9, 10 and 11 was passed upon adversely to defendants' contention in the Landers case, and we think that claims 3 and 5 are not materially different from the other asserted claims with respect to the question here raised. Indeed, defendants concede that all the claims are mere permutations and variations of language. The rulings of this court in Gilchrist Co. v. Kar-Lac Co., 7 Cir., 29 F.2d 153; and Research and Development Corporation v. Chase, 7 Cir., 88 F.2d 353, hold otherwise, and they are based on Continental Paper Bag Co. v. Eastern Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122.

Further contention is made with respect to claims 3 and 5[2] that they are fully met by the Wappat and Mammen patents, which were not cited by the Patent Office.

This contention relates to the phrase in claim 3, "locking means for holding the aforesaid shiftable means in a predetermined position." Defendants insist that the words "locking means" refer to the small detent 61 on the bottom of the lever 58, while plaintiff urges that that detent is merely to position the lever so that it can not be accidentally displaced. They argue that the claimed "shiftable means for controlling the operation * * * of (the) wringer" is the clutch and its associate parts; that the lever is a shifting means which is used to shift the shiftable means; that it is the spring detent 49 and its associate parts, and not detent 61, which lock the shiftable means. They further argue that detent 61 does not lock anything and is not described as locking anything. On the other hand, the specification describes the spring detent 49 and its associate parts as operating to hold the shiftable means in position, thus preventing the operation of the wringer. Furthermore, the specification discloses that the clutch is the passive member which is acted upon, and the actuating shaft handle 58 is the active member. While the term "shiftable" is not used in connection with either of those members, the word "slidable" is used in describing the clutch, and no such active term is applied to the shaft handle.

A similar contention relates to the phrase in claim 5, "means for locking the reversing mechanism in the neutral position." Here defendants contend that the words "reversing mechanism" refer to the lever 58, while plaintiff insists that they refer to the clutch and its associated parts which actually cause the reversal of the mechanism. They argue that the lever does not cause the reversal of the mechanism, but merely controls the mechanism, and that it is the spring detent 49, and its associated parts, which lock the reversing

2 "3. In a device of the character described, the combination with an adjustably mounted wringer, of shiftable means for controlling the operation of said wringer, locking means for holding the aforesaid shiftable means in a predetermined position, and locking means for holding the wringer in positions of adjustment, both of said locking means being interconnected so that when either is locked the other is capable of being released."

"5. In a device of the character described, the combination of an adjustably mounted wringer, reversing mechanism therefor, means for locking the reversing mechanism in the neutral position, and means for locking the wringer in position of adjustment and interconnected with the first mentioned locking means so that each locking means is in locking position when the other is released."

mechanism, rather than detent 61. Furthermore, each of claims 3 and 5 discloses that the two locking means are interconnected. It is obvious, therefore, that if detent 61 is construed as the first locking means, then there is no interlocking or interrelation between it and the other locking means, whereas there is between the locking means 49 and locking means 45. The most that can be said is that the language of the claim creates an ambiguity with respect to this contention. We do not admit this to be true, for we think plaintiff's contention is the more logical of the two. However, if they were evenly balanced, and we can not concede more, it would be our duty to construe the language in such manner as to preserve the patent and not destroy it. Eibel Process Co. v. Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523; Smith v. Snow, 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721. Under these circumstances we hold that these claims are not met by Wappat or Mammen.

The District Court found that the defendants' machines embody all of the elements of the combination of the claims in suit, and operate in substantially the same way to get the same results, hence it sustained the charge of infringement.

This question of infringement seems to be limited to the question of equivalents, and defendants urge that the mechanisms involved are neither interchangeable nor mechanical equivalents.

■ Patents are not limited to the structure described and shown, but the invention may be embodied in various forms. A transposition or rearrangement of the parts as set forth in a patent is an embodiment of the patented invention and does not avoid infringement unless form, location or sequence is essential to the result or to the novelty of the claims. Continental Paper Bag Co. v. Eastern Paper Bag Co., supra; Simplex Co. v. Star Co., 7 Cir., 37 F.2d 491. Infringement is not avoided by combining two elements of a claim in one part. Bundy Mfg. Co. v. Detroit Co., 6 Cir., 94 F. 524; Dowagiac Co. v. Brennan & Co., 6 Cir., 127 F. 143.

■ We think there can be no doubt that each of the asserted claims reads upon defendants' structure, and the only seemingly important difference between the patent disclosure and the accused structure lies in the fact that defendants use one lever which performs the same function, in the same manner, and accomplishes the same result, as do Eden's two levers. The District Court found equivalency, and we agree. There was certainly substantial evidence to support this conclusion, and though we might not agree with the trial court, yet we are not privileged to disturb its conclusion in this respect, for findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; General Motors Co. v. Swan Co., 6 Cir., 44 F.2d 24; Stevens v. Carl Schmid, Inc., 2 Cir., 73 F.2d 54.

It is argued by appellants that in Miller v. Eagle Co., 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121, it was held that interchangeability is a test of infringement, but under the facts there present we think it is clear the Court referred to functional rather than physical interchangeability. This would seem to be true in the light of more recent decisions. Continental Paper Bag Co. v. Eastern Co., supra; Hildreth v. Mastoras, 257 U.S. 27, 42 S.Ct. 20, 66 L. Ed. 112; Eibel Co. v. Paper Co., supra; and Sanitary Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147.

Of course, as defendants urge, there can be no infringement without substantial identity, and the mere reading of the claims upon the accused structure does not connote infringement unless there is equivalency. However, we have here substantial identity both in combinations and in elements, and it seems to us that equivalency is obvious. We think there was no error in holding the claims infringed.

■ Defendants further contend that plaintiff is barred from any recovery of profits, or damages, or other relief under the expired Eden patent, because of laches of its predecessors in title, in failing to give any notice of a claim of infringement of that patent against defendants' swinging wringer for a period of seven years, knowing during all that time that defendants' structure was being extensively advertised, sold and used throughout the United States, and because of its own lack of diligence in pressing its claim. These were all questions of fact and were sharply contested. There was substantial evidence in support of the lower court's finding and we can not disturb it. The same question

was presented in the Landers case, supra, and a like finding was made.

As to the Eden patent the decree of the District Court is affirmed.

## Couch and Wallace Patent, No. 1,325,234.

The decision of the District Court on both the Couch and Wallace patent and the Prachar patent is based upon disclaimer questions. The court found that the Couch and Wallace patent expired on December 16, 1936, nine days after this suit was filed; that the device covered by that patent was never made, sold nor used commercially. The court further found that four months after this patent was issued the Patent Office declared an interference between its claims 1, 3 and 11, and the Eden application, then pending, which had been filed five months earlier than the Couch and Wallace application. The Patent Office thereupon fixed time for taking testimony concerning whether Couch and Wallace or Eden was first, but as Couch and Wallace relied on their filing date and made not attempt to prove any date earlier than Eden's filing date, the Patent Office on March 7, 1921, awarded priority to Eden, and these claims now appear in the Eden patent as 12, 13 and 14. No appeal was taken from that decision, nor was review thereof sought. Claims 1 and 3, and 11 and 5 of the Couch and Wallace patent were not disclaimed, respectively, until nearly fourteen and fifteen and one-half years after the decision of the Patent Office on March 7, 1921. The disclaimers were filed by plaintiff alone, and this was done approximately five months, and two years and eight months after it acquired title to the patent. The court further found that claims 2, 4 and 8 of the Couch and Wallace patent, here asserted, were not definitely distinguishable from claims 1, 3, 4 and 11.

Upon these facts the District Court concluded that as the Couch and Wallace patent had expired, plaintiff was not entitled to injunctive relief under it, even if valid; that claims 2, 4 and 8 of this patent were each invalid; that plaintiff having admitted, by the filing of disclaimers of claims 1, 3, 5 and 11, that these claims were invalid, as covering more than that of which Couch and Wallace were the original inventors or had the right to claim as new, and that as claims 2, 4 and 8 of that patent, here asserted, were not materially different from the disclaimed claims, these claims were invalid.

The court further concluded that plaintiff was not entitled to maintain this suit under claims 2, 4, and 8 of this patent, because they were not definitely distinguishable from claims 1, 3, 5 and 11 of that patent disclaimed by plaintiff; that this patent in suit was invalid in its entirety because the filing of the disclaimers of claims 1, 3, 5 and 11 was unreasonably neglected and delayed. Hence, the court concluded that the defendants were entitled to a decree dismissing the bill of complaint as to the Couch and Wallace patent.

The District Court based its ruling upon R. S. §§ 4917 and 4922, 35 U.S.C.A. §§ 65, 71, as construed in Maytag Company v. Hurley Machine Co., 307 U.S. 243, 59 S.Ct. 857, 83 L.Ed. 1264. It was there said that unreasonable neglect and delay of a patentee in suing upon or disclaiming a claim not definitely distinguishable from another adjudged invalid for anticipation and disclaimed, avoids the entire patent.

■ There are two questions presented here with respect to this patent: (1) Was the entry of the disclaimers unreasonably neglected or delayed; and (2) were the retained claims definitely distinguishable from the disclaimed claims. The first question is one of fact and was determined adversely to plaintiff by the lower court, and if that determination is supported by substantial evidence, we are not permitted to interfere. Rule 52, Federal Rules of Civil Procedure. Plaintiff concedes that the first question is an open one, but it urges that upon general equitable principles the delay was not unreasonable under the facts presented.

■ In this respect plaintiff contends that the broad claims of this patent were disclaimed and the narrower ones were retained, and that since defendants infringed all of them, they were favored rather than injured, and there were no intervening rights which could constitute an estoppel against plaintiff. Moreover, it urges that there is a lack of proof that defendants proceeded to infringe on the theory that the Couch and Wallace patent was invalid because of failure to enter the disclaimer earlier; that defendants infringed both the Eden and the Couch and Wallace patents; that claims 1, 3 and 11 of Couch and Wallace were in the Eden

patent, as claims 12, 13 and 14 respectively, which defendants defied, and would have defied had they been in Couch and Wallace alone.

These contentions, if valid, must be based upon R. S. § 4922, 35 U.S.C.A. § 71. This section provides that whenever, through inadvertence, accident, or mistake, and without any willful default or intent to defraud or mislead the public, a patentee has, in his specification, claimed to be the first inventor of any material or substantial part of the thing patented, of which he was not the first inventor, he or his assigns, whether of the whole or any sectional interest in the patent, may maintain a suit at law or in equity, for the infringement of any part which was bona fide his own, if it is a material and substantial part of the thing patented, and definitely distinguishable from the parts claimed without right. But costs shall not be awarded to him unless the proper disclaimer has been entered at the Patent Office before commencement of the suit. This section, however, expressly states in its concluding sentence: "But no patentee shall be entitled to the benefits of this section if he has unreasonably neglected or delayed to enter a disclaimer."

Conceding without admitting that plaintiff's last mentioned fact contentions are true, it is not apparent that this would in any way establish the fact that the patentee or the assignees, immediate and remote, had not unreasonably neglected or delayed in entering the disclaimers. This requirement of the statute is conditioned upon nothing but the absence of unreasonable neglect and delay, and we are not permitted to read into the statute other conditions such as suggested by plaintiff's present contentions. It calls our attention to the fact that, "It usually takes a number of adjudications by different Courts to apply the ruling (such as in Maytag Co. v. Hurley Mach. Co., supra) within the limits intended, and care must be exercised to avoid 'an unjustifiable swing against' the preceding rule and practice." This suggestion does not appeal to us. Our experience has proved to us that such suggested procedure has seldom proved either satisfactory or productive of the suggested results. In view of the unambiguous language employed in both the statute and the decision referred to, we are convinced that it is not within our duty or power to further expatiate upon the Supreme Court's intention.

To say that at the time of the entry of the default judgment by the Patent Office, no court had held that such a judgment required the filing of a disclaimer, seems to us to be beside the question. The same may be said with respect to the financial condition of Couch and Wallace at that time, and with respect to plaintiff's conclusion that the public was in no way concerned. None of these facts, if admitted, could avoid the plain requirement of the statute as interpreted in the Maytag case. Since the District Court after hearing the witnesses has found the facts specially, based upon substantial evidence, we are not permitted to find differently. Plaintiff was charged not only with its own delay, but also with that of its predecessors in title, and the fact that it purchased this patent within a short time of its expiration, without examining this question, or, if it did so, not heeding it, certainly adds nothing of an equitable nature to plaintiff's contentions.

That claims 2, 4 and 8, here relied on, are not definitely distinguishable from the disclaimed claims 1, 3, 5 and 11, we think there can be no doubt. They obviously cover the same mechanism, and we insert claims 3 and 4 in the margin[3] with their differences emphasized, for the purpose of illustration. We approve the lower court's findings of facts, and its conclusions of law thereon with respect to the Couch and Wallace patent.

---

[3] "3. The combination with a base, of a support *adjustably arranged* on the base, a driven shaft on the support, a *retaining device* acting to hold the support in adjusted position on the base, and means cooperating with said retaining *device* and acting to prevent its disengagement from the base when the driven shaft is running and to permit such disengagement when the driven shaft is idle.

"4. The combination with a base, of a support *rotatively mounted* on the base, a driven shaft on the support, a *slidable retaining pin* acting to hold the support in adjusted position on the base, and means cooperating with said retaining *pin* and acting to prevent its disengagement from the base when the driven shaft is running and to permit such disengagement when the driven shaft is idle."

Prachar Reissue Patent, No. 19,217.

Claims 13 and 18 of this patent first appeared in the reissue, and they are the only ones here asserted.

The District Court found the following facts: The Maytag Company began the manufacture and sale of its Model M ironer charged to infringe, on June 27, 1930, two months after the issue of the original patent, and three years and seven months before the application for reissue was filed. On June 9, 1934, plaintiff notified Maytag that it was infringing the original patent, without any intimation that the patent was being reissued. Maytag continued the manufacture and sale of the Model M ironers from June 27, 1930, until August 15, 1935, when it completely discontinued their manufacture and sale. In July, 1937, it discontinued the manufacture and sale of its Model D ironer, which is substantially identical with Model M.

On February 18, 1936, plaintiff filed suit under Prachar reissue patent against Landers, Frary and Clark in the United States District Court for Connecticut, and in that suit relied on claims 14, 19, 20, 21 and 24. On November 10, 1937, that court held each of these claims invalid because anticipated in the Iglauer patent, No. 1,591,316, dated July 6, 1926 (21 F.Supp. 241). The application for the Iglauer patent was filed July 25, 1921, long prior to the earliest date established for Prachar. This decision was affirmed (per curiam), by the Court of Appeals for the Second Circuit on December 19, 1938 (100 F.2d 1009). No petition for rehearing or for certiorari to the Supreme Court was filed.

On February 8 and February 16, 1939, respectively, plaintiff filed disclaimers of claim 24 and claims 14, 19, 20 and 21 of the Prachar reissue patent.

Claims 13 and 18 of the Prachar reissue patent are not definitely distinguishable from 14, 19, 20, 21 and 24 which plaintiff, by disclaiming them, admitted were for a subject matter which was not new with Prachar.

Upon these facts the court concluded that claims 13 and 18 of the Prachar reissue patent in suit were invalid, and that plaintiff was not entitled to maintain this suit as to them, because they were not definitely distinguishable from claims 14, 19, 20, 21 and 24, which had theretofore been disclaimed, hence defendants were entitled to a decree dismissing the bill of complaint as to the Prachar reissue patent.

With respect to this patent, the District Court did not pass upon the question as to whether there was unreasonable neglect or delay in filing the disclaimers.

This patent, as well as the Iglauer patent, is sufficiently described in Apex Electrical Mfg. Co. v. Landers, Frary and Clark, supra, both of which are referred to in Judge Baltzell's findings.

 Plaintiff first contends that under Section 4917 of the Revised Statutes its action may be maintained, relying on the provision that "No * * * disclaimer shall affect any action pending at the time of its being filed, except so far as may relate to the question of unreasonable neglect or delay in filing it." It would seem clear that the words "any action pending," in this provision, must refer to pending actions in which such disclaimed claims were involved.

In order to clarify the issues raised, and those decided, it will be helpful to remember certain pertinent facts with the dates of their occurrence.[4] It is obvious from these facts that no action was pending with respect to claim 13 when the disclaimers were filed, and claim 18 was never disclaimed. Furthermore, none of the disclaimed claims was in suit at the time of the trial, for plaintiff had withdrawn all of them, approximately ten months previously, except claim 24, and it never was in issue in this case. It is clear that the present decree can not affect the disclaimed claims, nor be affected by them within the

---

[4] Prachar (original) application filed 1-16-26. Issued 4-8-30.

Prachar Reissue 19,217 application filed 1-8-34, Issued 6-19-34.

Original complaint filed, claims asserted 14, 15, 18 to 23, inc., 12-7-36.

Amended complaint filed, same claims asserted, 12-11-36.

District Court (2d C.) holds claims 14, 19, 20, 21 and 24 invalid, 11-10-37.

Affirmed by C.C.A. (2), 12-19-38.

Disclaimers filed as to 14, 19, 20, 21, 24; 2-8 and 16, 1939.

Amended complaint filed—omitting claims 14, 19, 20 and 21, 3-18-39.

Amended complaint filed—omitting claims 15, 22 and 23, 6-13-39.

Substitution of claim 13 for 15, 6-13-39.

Argument of Cause, 1-16-40.

Findings, conclusions and decree of District Court, 3-15-40.

meaning of these sections. See Ensten v. Simon Ascher & Co., 282 U.S. 445, 51 S. Ct. 207, 75 L.Ed. 453. We think there is no merit in this contention.

Plaintiff further contends that a disclaimer does not have the effect of conceding that that which is disclaimed is in the prior art. This refers to the lower court's last finding, wherein it is stated that plaintiff by its disclaimers admitted that those claims disclosed subject matter not new with Prachar. We can readily conceive instances where a disclaimer would not have the effect of such a concession, and we can just as readily conceive instances wherein it might create at least a rebuttable presumption, which if not overcome by a preponderance of the evidence would warrant the trial court in relying on the presumption. We think the circumstances here presented warranted the District Court in finding as a fact that plaintiff, by its disclaimers, admitted invalidity because of prior disclosures of Iglauer. The District Court and the Circuit Court of Appeals for the Second Circuit held the claims invalid for that reason, and within less than two months plaintiff acquiesced in those rulings by filing the disclaimers, and the validity of those claims, we think, is not in issue.

Furthermore, it can not be fairly said that the District Court concluded as a matter of law that claims 13 and 18 were invalid merely because plaintiff had admitted the invalidity of the disclaimed claims, which the court thought were undistinguishable from claims 13 and 18. The conclusion of invalidity is based upon all the facts found which include those relating to decisions in the Second Circuit with respect to the disclaimed claims. Ordinarily the decision of one circuit court as to the validity of a patent claim does not affect the jurisdiction of any other circuit court hearing the same question and deciding it differently. However, the disclaim-ers have rendered it impossible to present those claims of this patent to any other court, except as permitted by Section 4917, because they can never be reclaimed under the Prachar patent.

If it be insisted, however, that we should decide as to the validity of the disclaimed claims, on the ground that we are here asked to invalidate other claims because they are alleged to be undistinguishable from the disclaimed ones, we say that we agree with the Second Circuit that the disclaimed claims are invalid, and we base our conclusion upon the reasoning set forth in the opinion of the District Court of the Second Circuit.

The record in this case is said by plaintiff to contain much more evidence, including prior art, than the record of the earlier case. We have considered this fact, and we find nothing in this record which we could regard as sufficient to cause us to change our minds in this respect.

It is further contended by plaintiff that claim 13 is definitely distinguishable from the disclaimed claim 24. The verbal distinctions between the claims are in the last elements in the claims. We herewith set forth in the margin the last element of each claim with emphasis on those parts of the disclaimed claim 24 which are not contained in the asserted claim 13.[5] We also set forth for the same purpose portions of the asserted claim 18 and the disclaimed claim 19 with emphasis upon the verbal differences.[6] We agree with the District Court that claims 13 and 18 are not definitely distinguishable within the meaning of the disclaimer statutes from the respective disclaimed claims 24 and 19. Ensten v. Simon Ascher & Co., supra; Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949; Maytag Co. v. Hurley Machine Co., 307 U.S. 243, 59 S.Ct. 857, 83 L.Ed. 1264.

The decree of the District Court with respect to each patent is affirmed.

---

| 5 Claim 13 | Claim 24 | 6 Claim 18 | Claim 19 |
|---|---|---|---|
| and means movable independently of said shoe shifting means for rendering said mechanism inoperative. | and *hand operated* means movable independently of said shoe shifting means for rendering and *maintaining* said mechanism inoperative. | and operator-operated means for effecting the driving connection between said members, first for a part and then for the remainder of one revolution of said driven member to shift said shoe into and out of engagement with the roll, | and operator-operated means for effecting the driving connection between said members, first for a part *of one revolution* and then for the remainder of one revolution of said *driving* member to shift said shoe into and out of engagement with the roll. |