**TORO MANUFACTURING CORPORA-
TION (A corporation of Minne-
sota), Plaintiff,**

v.

**JACOBSEN MANUFACTURING COM-
PANY (A corporation of Wiscon-
sin), Defendant (two cases).**

Nos. 61–C–97, 63–C–109.

United States District Court
E. D. Wisconsin.

April 30, 1965.

Gerrit D. Foster, Milwaukee, Wis., and George F. Williamson, Minneapolis, Minn., for plaintiff.

James E. Nilles, Milwaukee, Wis., for defendant, S. L. Wheeler, Milwaukee, Wis., of counsel.

GRUBB, District Judge.

The above-entitled actions are for infringement of letters patent. In each case plaintiff, Toro Manufacturing Corporation, requests injunctive relief, accounting, and award of treble damages together with allowance of reasonable attorneys' fees and costs. The question of damages having been severed in each case, the actions were consolidated for purposes of trial on the issues of validity and infringement.

*Patent No. 2,973,614*

H. F. Horner et al Patent No. 2,973,-614 (hereinafter referred to as "Patent 614") entitled "Rotary Power Mower and Catcher" issued on March 7, 1961, on an application filed November 21, 1958. Infringement is claimed as to Claims 1 through 4 and 8 through 12.

A general statement of the disclosures of Patent 614 is found in Claim 1. Broken down into its structural elements, this claim reads as follows:

"1. A lawn mower of the rotary cutter type having a cowling including a top and depending sides,

said sides having a lateral discharge opening,

a hollow conduit operatively associated with said cowling and having a forward end registering with said discharge opening and a rearward end,

an elongate bag having a mouth at one end disposed around the rearward end of said conduit,

and a support between said mower and the rear portion of said bag."

Claim 2 adds forward and rear wheels for supporting the cowling for travel over the ground and defines the conduit as terminating forward of a transverse line extending through the rear wheels of the mower.

Claim 3 calls for a lawn mower as in Claim 1, wherein the cowling includes an inverted channel circumferentially traversing the interior front portion thereof, in communication with the discharge opening, so as to define a generally transverse clipping receiving and discharging chamber.

Claim 4 further defines the cowling as shaped to define an inverted generally arcuate channel being effective to direct the clippings through the opening and to minimize recirculation thereof.

Claim 8 calls for a mower as in Claim 1, additionally including an upstanding handle attached thereto and extending rearwardly therefrom, and the support between the mower and the rear portion of the bag defined in Claim 1 as including the handle and a supporting member connected thereto.

Claim 9 details the positioning of the bag, when connected between the conduit and the supporting member, as being located substantially parallel to the han-

dle so as to extend rearwardly along a major portion thereof.

Claim 10 states that the bag is formed of air pervious material.

Claim 11 calls for a mower as defined in Claim 10, wherein the cowling is shaped to define an inverted, generally arcuate channel, effective to direct the clippings through the discharge opening and the conduit with sufficient force to carry them into the bag.

Claim 12 details the structure and function disclosed in the preceding claims. It calls for a mower, as in Claim 1, with forward and rearward wheels, upstanding handle extending rearwardly of the rear wheels, a support extending laterally outwardly from the mower and spaced considerably rearwardly of the rear wheels of the mower, the lengthwise dimensions of the bag being such that when one end is attached to the conduit and the rear portion is supported by the support, the bag is substantially parallel with a considerable portion lengthwise of the handle but in outwardly laterally spaced relationship with the handle, and with the bag support serving to maintain the bag in its substantially parallel relationship with the handle.

According to the patent specifications, the rapidly revolving, generally horizontal cutter blades are employed in combination with the enclosing housing, the revolution of the blades producing an updraft or suction of important assistance in cutting grass and weeds by sickle action. Among the objects of the disclosure is the provision of a rotary mower having a housing structure and grass-accumulating means wherein the bagging attachment is mounted in the direction of travel of the mower which permits easier maneuverability of the mower, as contrasted with the present bagging means where the bag is mounted at right angles to the direction of travel.

Reference to the specifications of the patent and the claim language indicates that the words "forward" and "rearward" when used therein relate to the positioning in the forward direction of travel of the mower. The specifications and drawings also indicate that the receiving tube or conduit is of longitudinally curved configuration, in general conformance with a continuation of the involute shape of the channel of the housing and may be constructed of a slightly flexible, tough plastic material.

*Validity of Patent 2,973,614*

Defendant contends that the claims in issue of Patent 614 are invalid under § 102 of Title 35 U.S.C.A. for complete anticipation by Mitchell Patent No. 2,-779,146, Titzer Patent No. 2,675,661, and the literature and activities relating to a bagging device of E. P. Campbell. Invalidity is further claimed under § 103 of Title 35 U.S.C.A. because of the alleged obviousness of the subject matter over the above-cited prior art together with Grosso Patent No. 2,539,779, Swartz Patent No. 1,939,579, and plaintiff's own work on bagging attachments performed in 1953. Additionally, defendant claims invalidity based on alleged failure to disclose and misrepresentations in the patent office concerning the application maturing into Patent 614.

In respect to Mitchell, it is contended that Claims 1 and 2 of Patent 614 find complete response in its structure. Mitchell is for a "Combination Rotary Mower and Lawn Sweeper." Its illustrations and language disclose that its operation is dependent upon use of a fan blade which blows the cuttings produced by the cutting blades into a short duct member communicating with the interior of the housing through an opening in the flange. A further duct, having three curved 90 degree turns, is connected to the short duct and terminates in a position above the center of the housing. A bag supported by a rack elevated above the top plate of the housing is adapted to being connected to the end portion of the thrice-bent duct so that cuttings and leaves will be blown into the receptacle.

The structure of Mitchell does not meet the literal claim language of Patent 614. Particularly, the element purportedly analogous to the conduit of Claim 1; that is, the duct leading from the mower housing of Mitchell to a bag positioned

on top thereof, lacks a rearward end— rearward having reference to the direction of travel of the mower. Its terminal portion is located forwardly of the end communicating with the discharge opening of the housing. As to the short duct, Mitchell does not call for or suggest attachment of a collecting bag to its rearward end. The duct members of Mitchell do not address themselves to the function of the conduit element of Patent 614 as disclosed in the claim language construed in light of the specifications. These members do not serve to deflect and convey severed clippings to a bag positioned according to the specifications of Patent 614 and more fully pointed out in detailed, representative Claim 12 thereof.

Titzer patent is for a "Disk Type Lawn Mower," a machine for cutting and trimming grass or other growth and for comminution of cut materials. The patent and the model constructed by plaintiff in accordance with its disclosure reveal a conduit in the form of a passage communicating with the interior of the housing and extending toward the side and rear thereof. The patent indicates that the rearward end of the conduit is adapted to be surrounded by a bag for collection of comminuted particles discharged from the mower. A baffle plate extends from the central portion of the housing adjacent the opening to the conduit and guides the cut material into the channel.

The conduit in Titzer does not correspond to the conduit of Patent 614 in that it lacks a forward end registering with a discharge opening in the side of the cowling. Further, Titzer does not disclose details as to positioning or support of a collecting bag. Although Titzer indicates that the baffle of the housing guides the cut material into the conduit, it has not been shown that the baffle avoids comminution and recirculation of the cut grass within the mower housing to achieve desirable bagging efficiency. The structure of Titzer does not operate to accomplish the function of the subject matter of Patent 614 and does not respond literally to the claim language.

In October of 1957, Edwin P. Campbell displayed a bagging attachment on a rotary mower at the New York Hardware Show. The literature distributed by Campbell on this occasion shows a rotary mower having a lateral, outward extension from the side of the housing terminating in a discharge opening. A muslin bag, mounted on a rigid, self-supporting bag holder and having a neck attachment, has a bag holder arm which is inserted into support clips mounted on the mower housing. An observer at the show recalled seeing a rigid support from the edge of the bag down to the mower. The mower displayed at the show was that illustrated in the literature. The grass collecting bag extends laterally from the side of the mower housing and in a slightly rearward direction in relation to the housing and direction of travel.

Campbell distributed possibly 5,000 copies of this literature and took orders for about 1,000 bagging attachments. In filling the orders, Campbell, with one exception, furnished an improved model which had not been displayed at the show.

Prior to displaying his device at the New York Hardware Show, Campbell used his bagging attachment on a Yard-Man, Model 2,000, mower. Illustrations of this model show a rotary, side discharge mower having an inverted channel across the front portion of the housing leading to a side discharge opening.

The Campbell device presents a step in the art of bagging attachments for rotary mowers. It substantially exemplifies what the patent in issue characterizes as the "present bagging means where the bag is mounted at right angles to the direction of travel." Campbell does not overcome the objection to lack of maneuverability of this type of device which is solved by the element of the conduit and the positioning of the bag shown in Patent 614. This subject matter of the patent in issue is not disclosed or suggested by the Campbell structure. The evidence concerning Campbell's attempted support devices and back yard experimentation which were not demon-

strated at the New York Hardware Show fail to show the public nature of the claimed use. Devex Corporation v. General Motors Corporation, 321 F.2d 234, 239 (7th Cir. 1963), cert. denied 375 U.S. 971, 84 S.Ct. 490, 11 L.Ed.2d 418.

In its defense of invalidity based on obviousness of the subject matter of Patent 614, defendant relies, in addition to the references discussed above, on the Swartz and Grosso patents and on plaintiff's prior art in bagging.

The Swartz patent is for a vacuum cleaner having a fan chamber with an outlet neck extending outwardly to one side substantially at the center of the apparatus. A coupling to which is connected a dust collector bag is swivelled on the outlet neck. The upper end of the bag may be supported from the handle by a strap.

The Grosso patent relates to a rotating cutting disk type power mower utilizing suction to remove and lift grass cuttings in the manner of the operative principle of a vacuum cleaner. It shows an outlet opening located centrally in the top of the rotor housing. The outlet opening has a peripheral flange forming a nipple or collar to which may be attached a refuse bag. The illustrations of Grosso show this bag in a position substantially parallel to the handle of the machine and extending rearwardly of the housing in the general longitudinal direction of movement of the machine.

Plaintiff's experimental work in the year 1953, as shown in photographs, was concerned with a forage harvester in the form of a rotary mower with a rear discharge and a bag attachment extending rearwardly in line with the mower handle.

The prior art cited on the issue of obviousness of the subject matter of Patent 614 shows that various individual elements of the disclosure are old in the art and on occasion have been used in combination. None of the references disclose or directly suggest the combination of all of the essential elements performing the function set forth in the patent and demonstrated on the trial by a machine exemplifying the patent disclosure. Thus, Mitchell has a rotary mower with side discharge and a conduit leading to a collecting bag, but the conformation of the housing and conduit and the support and positioning of the bag do not respond to the claim language of Patent 614. This device is not capable of achieving the function called for in the objectives of the patent in suit. Titzer shows a rotary mower with side discharge and suggests a bag. It does not provide for a conduit and positioning of the bag as in Patent 614. Campbell's work involved a rotary mower with side discharge and bag, but it does not disclose a conduit, housing conformation, and bag positioning as called for in the patent in issue. Grosso shows a rotary mower and bag but lacks a side discharge, housing conformation, and a member performing the function of the conduit. Swartz, the vacuum cleaner patent which may have some relevancy because of the positioning of the collecting bag and a structure operating on a suction or air conveyance principle, lacks the rotary cutting feature, side discharge and element analogous to a conduit leading from a side discharge to the collecting receptacle. Plaintiff's earlier work does not disclose or suggest a conduit leading from a side-discharging mower to a bag positioned as in the patent in suit.

The claimed novelty of Patent 614 lies in the provision of structure operative to effect the efficient discharge of grass clippings from a rotary mower having a side discharge, and the collection of the clippings in a bag positioned parallel to the mower and rearward thereof to minimize interference with the operation of the mower. The various elements disclosed in Patent 614 cooperate to achieve this result. The housing structure and discharge opening serve to achieve the rapid discharge of the clippings without comminution or clumping. The conduit deflects and orients the stream of air and clippings into the collecting bag which is positioned parallel to the handle. It is the element of the conduit of a conformation to permit turn-

ing and direction of the clippings that overcomes the objection to the prior art of grass collection from a laterally discharging rotary mower having collecting means extending laterally and substantially at right angles to the mower.

■ The subject matter of Patent 614 meets the test of patentability under § 103 of Title 35 U.S.C.A. in that it reveals a novel combination of new and old elements so cooperating as to produce a new and useful result. Aerosol Research Company v. Scovill Manufacturing Co., 334 F.2d 751, 755 (7th Cir. 1964); Zegers, Inc. v. Zegers, 299 F.2d 769 (7th Cir. 1962), cert. denied 369 U.S. 889, 82 S.Ct. 1163, 8 L.Ed.2d 289; Copease Manufacturing Co. v. American Photocopy Equipment Co., 298 F.2d 772, 781 (7th Cir. 1961); and Minneapolis-Honeywell Regulator Co. v. Midwestern Instruments, Inc., 298 F.2d 36, 38 (7th Cir. 1961).

Defendant rejected a bagging attachment, such as the Campbell device, because its right angle positioning constituted an obstruction. Its engineer thought that it was obvious that a "chute" was needed to bring the bag into a position as close as possible to and alongside the mower. Defendant caused its sheet metal shop to fabricate such a chute having a 90 degree turn, and later, defendant prepared this part out of plastic material. However, this work was performed late in the summer of 1959, after plaintiff's model exemplifying the disclosure of Patent 614 was on the market. Although defendant's witness was unable to recall whether or not he had seen a model of plaintiff's mower, he admitted that he had knowledge thereof from pictures or descriptions of the structure at the time defendant prepared its version of the conduit.

One of defendant's dealers, commenting on the Campbell bagging attachment which he rejected as not having much practical application because of its projection to the right of the mower, expressed the thought that "it would be quite easy to fabricate a 90° chute whereby a grass catcher of this type could be located fore and aft, *such as the present Toro installations."* (Emphasis added.)

■■ Opinions, based on hindsight, as to ease of devising and manufacturing of a structure to achieve the desired result of turning and directing clippings from a side discharge rotary mower into a nonobstructing collecting bag, which opinions were formed with knowledge of successful structure designed by the patentees, have little significance on the question of obviousness of the subject matter of the patent. See Hazeltine Research, Inc. v. Dage Electric Company, Inc., 271 F.2d 218, 225 (7th Cir. 1959). On the other hand, plaintiff offered testimony of a manufacturer of twenty-seven years' experience in the art who was a competitor of the parties to this suit and who was a pioneer in the art of collection of clippings. He characterized the subject matter of Patent 614 as a new and low cost approach to an old problem. The willingness of this witness to testify against parties whom he considered to be infringers does not lessen the probative value of his opinion.

■■ The prior art of bagging attachments used with rotary mowers having a side discharge had failed to solve the structural and operative problem posed by the right angle collection devices. Notwithstanding the simplicity of the solution offered by the subject matter of the patent in suit, the prior art references, singly or considered together in light of their respective disclosures, did not reveal or suggest the combination of the operative elements. EKCO Products Company v. Chicago Metallic Manufacturing Company, 321 F.2d 550, 553 (7th Cir. 1963), and Shumaker v. Gem Manufacturing Co., 311 F.2d 273, 276 (7th Cir. 1962). It has not been shown that the new and improved result obtained by the structure of Patent 614 was obvious to one skilled in the art having no knowledge of plaintiff's patent disclosure.

Various types of rotary mowers have been on the market at least since the 1930's. While it had been believed that grass clippings should be left on the

ground, more recent theories recommend removal thereof after cutting. Gaged by the number of mowers presently being sold with and without grass collecting attachments, both theories appear to be current. The art of bagging or collection devices for clippings and debris removal in the case of rotary mowers also dates to the 1930's and became more crowded in the late 1940's and particularly during the 1950's. Examples of the art are the Cockburn patent issued in 1937 on an application filed in 1934; the Koch patent issued in 1951 on an application filed in 1946; Grosso patent issued in 1951 on an application filed in 1948; the Bennett and Mitchell patents issued in 1957 on applications filed in 1955, as well as the catcher used with the rearwardly discharging Sensation mower; and the bagging attachment developed by Campbell in 1956 and 1957.

For over twenty years various devices have been offered for the gathering of grass clippings, many of which were intended for use with rotary mowers having a lateral discharge. In view of the extended history of the development, plaintiff's bagging attachment which solved the problem of efficiently directing the clippings into a conveniently located bag constitutes the fulfillment of a long-felt need in the art.

Plaintiff's sales in the year 1959 of machines embodying the disclosure of Patent 614; that is, the bagging attachment as well as the mower housing more fully defined in the divisional Patent No. 3,043,853, represented an increase of approximately 60 per cent over its mower sales of its previous models in the preceding year. A steady increase in mower sales occurred from 1959 to 1964 with the exception of a slight decline in the year 1961. Plaintiff's computations concerning its share of the market of rotary mowers show a marked increase from the year 1958 to the year 1959 in which its new model mower and bagging attachment were introduced. There is some uncertainty as to the factor of total industry domestic shipment figures which raises doubt as to the accuracy of the individual figures but does not negative the fact of substantial increase.

While this increase in sales and share of market may be attributable in part to the newness of the product and the very substantial advertising and promotional efforts undertaken by plaintiff in connection therewith, consumer acceptance or commercial success of the mower and bagging attachment also resulted in important measure from the particular features disclosed in Patent 614. This is shown by a consumer-motive survey undertaken by plaintiff in July 1959 when its total advertising efforts were not as yet before the public. Purchasers of plaintiff's new mowers ranked the bagging feature first among the factors influencing their choice, with superiority of cut second in importance.

The evidence of record concerning the increase in plaintiff's sales, its share of the market, consumer acceptance, and defendant's imitation of the machine exemplifying the disclosures of Patent 614 warrants a finding of commercial success attributable to the features of the patent in issue and supports the conclusion as to the novelty of its subject matter.

Defendant raises a further defense to validity based on failure to disclose and misrepresentation in the prosecution of the patent application maturing into Patent 614. It has not pleaded or established fraud in connection with the purported misrepresentation. Defendant relies principally on the failure to disclose the prior work of Campbell. The pertinency of this work, insofar as it was known to plaintiff, has been discussed above. It is one example of the art, showing a right angle attachment, referred to in the statement of objects of the patent. There is no evidence to show that plaintiff was familiar with Campbell's experiments in attaching the bag to the mower handle with a curtain rod or with other prior art references offered by defendant as anticipatory art. Review of the file history does not establish that plaintiff is chargeable with misconduct in the patent office. Defendant

has cited no authority that permits a defense of invalidity based on nonfraudulent misrepresentation or failure to disclose.

*Infringement of Patent 2,973,614*

Plaintiff contends that Claims 1 through 4 and 8 through 12 of its Patent 614 are infringed by defendant's manufacture and sale of its bagging attachments sold with its rotary mowers illustrated in defendant's 1961 and 1962 catalogs and exemplified by defendant's commercial mower with bagger (plaintiff's Exhibit 7). These accused models will be referred to hereinafter as the "early" bagging attachments.

Plaintiff also claims infringement by the defendant's later, modified bagging attachment, first appearing late in 1962, consisting of a one-piece construction, exemplified by defendant's Turbocone machine with bagger attachment thereon (plaintiff's Exhibit 9) and bagging attachments for rotary mowers, illustrated in defendant's 1963 catalog. The modified accused models will be referred to hereinafter as the "later" bagging attachments.

Infringement by the "early" models is conceded but for the defenses of invalidity of the patent and certain further contentions as to irregularities shown by the file history. In this respect, defendant points to certain portions of the claims of the application for Patent 614, principally relating to the housing structure there defined as differing from the claims ultimately allowed. It is not now contended that this defense is in the nature of file wrapper estoppel.

■■ In view of the divisibility of the subject matter of the claimed invention of the application that matured into Patent 614 and its divisional Patent No. 3,049,853, defendant's reference to details of the specifications and application claims relating to the subject matter of the latter patent are not germane to the question of infringement of the claims of Patent 614. Further, comparison of the accused structure with specifications of the file history concerning formation and theories of operation which may be more restricted than the language of the claims allowed does not serve as the measure of infringement.

■ Defendant's "later" one-piece bagging attachment consists of a bag having a neck portion angularly attached to the main body of the elongate bag positioned similarly to that of the patent in suit. The neck portion of reinforced fabric is operatively associated with the lateral, rearwardly directed discharge opening of the cowling of the mower housing. It performs the function of deflecting grass clippings and directing the stream of air and clippings into the main portion of the bag. The subject matter of the patent in suit and the "later" accused device shows substantial similarity of structure performing substantially similar functions. The accused structure responds to the claim language of Patent 614 except for the nonessential detail requiring the mouth of the bag to be disposed around the rearward end of the conduit. The modification of combining into one unit the two elements of conduit and bag of Patent 614 does not serve to avoid infringement. Apex Electrical Mfg. Co. v. Maytag Co., 122 F.2d 182, 187 (7th Cir. 1941), cert. denied 314 U.S. 687, 62 S.Ct. 297, 86 L.Ed. 549; Zysset v. Popeil Brothers, Inc., 276 F.2d 354, 357 (7th Cir. 1960), cert. denied 364 U.S. 826, 81 S.Ct. 62, 5 L.Ed.2d 54.

■ Other than evidence of imitation of plaintiff's commercial structure embodying the disclosure of Patent 614, plaintiff has offered no proof as to the nature of the infringement. Plaintiff has not met its burden of showing a willful and wanton purpose to infringe. Cf. Copease Manufacturing Co. v. American Photocopy Equipment Co., 298 F.2d 772 (7th Cir. 1961); Upjohn Company v. Italian Drugs Importing Co., 190 F.Supp. 361, 367 (S.D.N.Y.1961).

*Patent No. 3,049,853*

Patent No. 3,049,853 (hereinafter referred to as "Patent 853") issued on August 21, 1962, as a divisional patent on application filed November 21, 1958. It is entitled "Rotary Power Mower" and

relates to a machine wherein rapidly revolving, generally horizontal cutter blades are employed in combination with an enclosing housing.

The claims in issue of Patent 853 read as follows:

"1. A rotary mower comprising,

a rigid housing having a top and a downwardly extending peripheral skirt,

means for mounting said housing for travel over the ground,

one side of the housing adjacent the front thereof having an unrestricted discharge mouth defined by an opening extending substantially the full heighth of said skirt, said mouth being directed laterally and outwardly,

said housing having a curved wall medium affixed thereto and extending downwardly and spaced inwardly from said skirt,

said wall medium extending forwardly along the side of the housing oppositely of said one side from at least a point spaced rearwardly of the transverse center line of the housing to a point spaced forwardly of the transverse center line, and thereafter extending transversely across the forward portion of said housing and ending at the rearward side of the discharge mouth and opening, said wall medium cooperating with said skirt to define a volute channel progressively increasing in width and heighth from its beginning to its ending at said discharge mouth and being unrestricted and uncumbered to provide for ever-expanding fast discharge of grass cuttings from the under forward portion of said housing,

driven rotary cutter mechanism supported from said housing and having a purality of cutter blades with cutting edges and with inclined edges for producing an up-draft fan action, said blades revolving in a general orbit within the confines of said housing and revolving directionally towards said discharge mouth,

whereby in the forward travel of the housing, stalks of grass and weeds are cut primarily in the forward portion of said orbit and are substantially immediately and effectively widely dispersed through said discharge mouth.

"2. The structure as defined in claim 1 wherein said wall medium has its beginning at the rear of said one side of said housing and cooperates with said peripheral skirt whereby the volute channel defined thereby extends to an arc greater than 260 degrees."

The patent specifications describe operation by an updraft or suction principle produced by the revolution of the blades as of important assistance in the cutting of grass or weeds by sickle action. The revolution of the blades "just below" and in close combinative relation with the involute channel is stated to produce a rapid air vortex or swirl in the channel. Due to the constantly increasing cross-sectional area of the internal channel from the diminished rear and right side of the housing, there is provision for the accommodation of an increasingly expanding volume of accumulated cuttings and air.

As anticipatory art against Patent 853, defendant relies on Morris Patent No. 2,719,396 and Coners Patent No. 2,708,-334, cited as references in the file of the patent in issue; Frey Patent No. 1,899,-564; and the commercial art of the Power King, Reo-Jet, and David Bradley mowers, defendant's own Turbo-Vac models.

The Morris patent, issued in 1955, is for a rotary power lawn mower with a lateral discharge. It discloses a channel

of progressively increasing height which starts near one side of the housing forwardly of the cutter axis and continues upwardly and laterally to provide a laterally directed opening at the side toward which the forward path of the blade turns in operation. The cut grass is raised and ejected in the same semicircular traverse of the blade in which it is cut. The patent recognizes that substantially all of the grass cutting is performed in the forward 180 degrees of cutter rotation. It ascribes the avoidance of recirculation of clippings within the housing to the flange or inner wall of the channel. The lateral movement of the clippings is assisted by the outward flow of air set in motion by the blades. The clippings discharged from the housing are not deposited in windrows but are widely dispersed.

The Frey patent relates to a power lawn mower with a rearward discharge with tangential direction. It has a spiral form housing increasing in height from its beginning and reaching its maximum height at the point of the discharge opening. The arc of the channel of Frey is 270 degrees. An object of Frey is the design of a housing that permits the immediate discharge of the severed clippings without clumping. The patent also provides for cutting blades having fan blades or impellers which provide suction to lift the severed grass by the draft of air created by the impellers. With the aid of centrifugal force, the suction lift serves to accomplish discharge outwardly through the tangential discharge opening. The cutting blades revolve in substantially the horizontal plane of the outlet opening. There are means to cause adjustment of the blade orbit with respect to the bottom inlet opening. This adjustment also affects the distance between blade orbit and channel. The blade is enclosed by the lower end of the generally circularly formed housing.

A channel formed by the housing of the Power King mower increases in width and height from its beginning to its discharge end. It traverses an arc of about 170 degrees. The discharge opening of the housing is located at its side and is directed rearwardly. The cutting orbit of the blades of the Power King mower is within the confines of the housing. A baffle on the underside of the housing near the discharge end of the channel minimizes recirculation of the clippings and directs them to the discharge opening.

A channel of increasing width and height is shown in the David Bradley mower. The Reo-Jet mower has a channel of over 180 degrees, commencing behind the transverse center line of the mower, which increases in width and height only at a transitional position at its beginning. A channel of over 180 degrees of circumferential length is also shown in the Coners patent. Defendant's Turbo-Vac mowers, which went into production late in the year 1957, also show a circumferential channel of constant width with a deck deflector plate that serves to progressively increase the height of the channel for about 135 degrees of its length.

As novel improvements over the prior art, plaintiff relies on the combination of rapidly revolving air lift blades, the volute channel increasing in height and width of an arc of greater than 260 degrees, and on the proximity of the blade orbit as within the confines of the channel of the volute; that is, a plane just below the lower edge of the inner skirt of the volute channel of the housing. In plaintiff's commercial exemplification of the subject matter of this patent, the distance between the lower edge of the inner volute skirt and the plane of the orbit of the cutting edge of the blades is about three-eighths inch. It is contended that the combinative relation of the features serves to create a mass of air and cuttings carried within the channel and tangentially ejected from the lateral, rearwardly directed discharge opening. The proximity of blade orbit to the lower edge of the inner volute skirt is relied on particularly as forming a dynamic seal to prevent blowout of the clippings; that is, an escape of the severed grass from the channel into the interior of the hous-

ing, thereby avoiding recirculation of the clippings. Dispersion of the clippings after discharge and without attachment of collecting bag is in a wide pattern of a width of several rows of the cutting swath.

The cited prior art patents, commercial structures, and expert testimony on the trial reveal that the operational theory of the subject matter of Patent 853 was well known in the art. Morris and Frey patents recognize the principle of an up-draft, suction force created by the movement of the cutting blade operating in combination with housings having a circumferential, wind-tunnel-shaped channel of increasing cross-sectional area, particularly over that portion of the blade orbit wherein most of the cutting takes place in the rotary mower. The prior art shows variations in configuration of channel structure as to length of arc and cross-sectional dimensions increasing in width as well as in height which respond to the claim language of Patent 853.

The rearward discharge of Frey does not serve to distinguish the operative principle of pneumatic conveying there disclosed. Any improvement disclosed in Patent 853 over the prior art is one of degree in the efficiency of the cutting operation and dispersion of the severed grass discharged from a rotary mower with minimal comminution or recirculation of clippings within the housing. The improvement does not involve a new principle of operation or the performance of a new function by new means or by old elements in new and inventive combination.

Plaintiff particularly emphasizes as a novel feature of Patent 853 the spatial relation of the blade orbit to the housing channel. The language of Claim 1 defines this as a "general orbit within the confines of said housing." The patent specifications further explain the position of the blade orbit as "just below" and "in close combinative relation with the involute channel" of the housing. The claim language describing this feature reads directly on the prior art. Read in light of the explanatory specifications

and drawings, it comprehends more than the three-eighths inch spacing shown in plaintiff's commercial mower exemplifying the patent subject matter to which is attributed the function of a dynamic seal to prevent blowout and recirculation of the clippings. A substantially similar result was achieved with the Morris patent structure having similar elements but a wider spacing between blade orbit and lower edge of the inner skirt. The advance in the art claimed by plaintiff as due to the spacing feature is not required by the claim language. It is neither novel nor nonobvious. Particularly is this true where the spacing of the blade is necessarily conditioned by clearance problems due to vibrations incidental to the speed of blade revolution.

Variations in channel length, in the manner of achieving increase in cross-sectional dimension vertically or horizontally, or both, and in spacing of blade orbit in relation to the wind tunnel may result in grass cutting and dispersion with higher efficiency than that achieved by prior art structures. The essential structure and its method of operation being old in the art, the improvement of operation shown here does not render the subject matter patentable invention under § 103 of Title 35 U.S.C.A. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152–153, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

Plaintiff's mowers exemplifying the subject matter of Patent 853 were offered to the public together with its new bagging attachment disclosed in Patent 614. There is insufficient proof to indicate that the commercial success attending these models is attributable in any measure to the wind-tunnel housing of Patent 853. Plaintiff's consumer motive survey gave the factor of superiority of cut an importance second to that of the new bagging attachment. Superiority of cut is not clearly the equivalent of wide dispersion and avoidance of comminution of clippings. Plaintiff's disinterested witness who was impressed with the novelty of the bagging attachment did not par-

ticularly comment on the wind-tunnel concept, proximity of blade orbit to inner wall medium, or other features purportedly constituting invention which are disclosed in Patent 853.

Further, the record does not support a finding of a longfelt need for the more efficient type of cutting and dispersion of clippings performed by a machine fashioned according to the disclosures of Patent 853. The operation of such a device in the manner shown on the trial is but an improvement in efficiency in an art that offered numerous examples operating by the same method of pneumatic conveying and discharge with substantially similar structural devices and, according to the inventor of the Morris patent, with a substantially similar degree of efficiency.

█ Although the Morris patent, a close reference, was before the patent office and the Frey patent is of the same subclass and class as that searched by the examiner and was, in fact, a reference in the cited Morris and Coners patents, the presumption of validity of the patent in issue cannot prevail in the face of the evidence of record concerning the state of the prior art in this case. The examiner did not have the benefit of the testimony of the inventor of the Morris patent concerning the manner of operation of a machine constructed according to its disclosure which approximates the performance of plaintiff's device, differing not in essential structure or manner of operation but only in degree of efficiency of performance. Nor does it appear that the examiner was aware of the commercial art mowers showing various configurations of the wind-tunnel feature which suggest the claimed invention. Defendant has met its burden of showing lack of novelty and obviousness of the subject matter by substantial and clear evidence. Devex Corporation v. General Motors Corporation, 321 F.2d 234, 238 (7th Cir. 1963), cert. denied 375 U.S. 971, 84 S.Ct. 490, 11 L.Ed.2d 418.

*Infringement of Patent 3,049,853*

Plaintiff claims infringement of Claims 1 and 2 of Patent 853 by defendant's Tur-

bocone model mowers shown in defendant's 1963 catalog and exemplified by plaintiff's Exhibit 9. Assuming arguendo the validity of Patent 853, defendant contends that certain structural differences between the accused device and the requirements of the claims of Patent 853 serve to avoid infringement.

The patent in issue calls for a wind tunnel progressively increasing in width and in height from its beginning. The accused device has a wind tunnel progressively increasing in height from its beginning but increasing in width only at a point near the discharge opening. This structural difference is closely related to another claimed distinction; that is, that the patent calls for a "volute" channel, while the accused device does not show a "volute" but a torus or doughnut-shaped channel. According to the definitions offered by defendant, a volute requires that the inner and outer walls of the channel are not concentric as they are in a torus. The spiral shape or volute of the patent is incidental to the *increasing width feature* of the channel. The inner wall grows progressively closer to the center, while the outer wall or peripheral skirt of the housing moves away from the center of the structure.

In view of the distinction based on the requirement of increase of width from the beginning of the channel and of a volute form of channel, the claim language does not literally read on the accused device. The operative principle of the subject matter of the patent and of the accused machine depends upon a progressively increasing cross-sectional area in the wind tunnel to permit accommodation of the expanding volume of clippings and air. This principle is not dependent upon an increase in width as long as the required increase in cross-sectional area is accomplished by an increase in height. Defendant's structure, in this respect, is a colorable variation of the subject matter of the patent in suit. If Patent 853 were valid, infringement would not be avoided by this variation.

A further structural distinction is claimed to lie in the safety bar of the

discharge opening of the accused device which restricts this opening. A similar restriction of the discharge opening is found in the prior art of Morris and Coners patents. Claim 1 of the patent in suit defines the discharge opening as unrestricted and "uncumbered."

If the patent in suit were determined to be valid, the departures from the literal claim language found in the structure of the accused mower would not serve to avoid infringement of its claims. The accused machines accomplish a substantially identical function by substantially similar means as does the subject matter of the patent in suit.

The defense of file wrapper estoppel is not supported by the file history of the application maturing into Patent 853. It does not appear from the history that the requirement of progressively increasing width of the wind tunnel, which is already found in the claims as originally submitted, was inserted during the prosecution of the application to overcome an objection based on the prior art.

The fact that the structural details claimed to distinguish the accused mowers from the patent in suit are found in the prior art does serve to emphasize the lack of novelty of the subject matter of the patent in suit, particularly with reference to the configuration of the wind-tunnel concept. A construction of the claims as broad enough to read on the accused device would require a finding that the claims also find response in the prior art.

In accordance with the foregoing opinion, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff, Toro Manufacturing Corporation, is a corporation organized under the laws of the State of Minnesota, having its principal office and place of business at Minneapolis, Minnesota.

2. Defendant, Jacobsen Manufacturing Company, is a corporation organized under the laws of the State of Wisconsin, having its principal office and place of business at Racine, Wisconsin, within the Eastern District of Wisconsin of the United States District Court.

3. Plaintiff is the owner of Patent 614 and Patent 853, together with all rights to damages for the infringement thereof.

4. Patent 614 relates to a bagging attachment used in combination with a rotary power lawn mower as more fully described in the foregoing opinion. Plaintiff claims infringement of its Claims 1 through 4 and 8 through 12 by the bagging attachments and models of mowers manufactured and sold by defendant since issuance of the patent, and by the modified bagging attachment and mower sold beginning in the summer of 1962, as set forth in the foregoing opinion.

5. Defendant claims invalidity of Patent 614 based on anticipation under § 102 of Title 35 U.S.C.A., on lack of novelty under § 103 of Title 35 U.S.C.A., and on failure to disclose and misrepresentation in the patent office. It denies infringement by its earlier models on the ground of irregularities in the prosecution of the patent application in issue and claims non-infringement of its modified model.

6. The subject matter of the claims of the patent in suit does not find complete response in the prior art of the Mitchell or Titzer patents or in the structure developed by Campbell.

7. The prior art consisting of the Mitchell, Titzer, Swartz, and Grosso patents and the Campbell structures, considered together, does not disclose or suggest the novel combination of elements cooperating to accomplish the useful and efficient operation of the subject matter of the patent in suit.

8. The bagging attachment disclosure of the patent in issue fulfilled a need in the art of collection of grass clippings discharged by rotary mowers.

9. The commercial embodiment of the bagging attachment subject matter of Patent 614 enjoyed commercial success.

10. Defendant has failed to show actionable misrepresentation in the prose-

cution of the patent application resulting in issuance of Patent 614.

11. Claims 1 through 4 and 8 through 12 of Patent 614 find response in defendant's early model bagging attachments and mowers charged with infringement.

12. Defendant has failed to establish a defense based on the file history of the patent in respect to infringement by its early models.

13. The claims in issue of Patent 614 find response in defendant's later, modified bagging attachment and mower charged with infringement. The one-piece construction of the bagging attachment performs the function of grass collection in a substantially similar manner with substantially similar means as does the structure disclosed in Patent 614.

14. Plaintiff has failed to. establish that defendant's conduct in infringement of the claims of Patent 614 was wanton or willful.

15. Patent 853 relates to a rotary mower as more fully described in the foregoing opinion. Plaintiff claims infringement of its Claims 1 and 2 by the manufacture and sale since issuance of the patent by defendant's Turbocone model mowers.

16. Defendant claims invalidity of Patent 853 based on lack of novelty over the prior art under § 103 of Title 35 U.S.C.A. It denies infringement and offers the defense of file wrapper estoppel.

17. The prior art consisting of the patents to Morris, Coners, and Frey and the commercial structures of the Power King, Reo-Jet, David Bradley, and defendant's Turbo-Vac model mowers, considered together, discloses the essential operative elements of the subject matter of Patent 853 and suggests the combination of said elements and method of operation of the patent disclosure.

18. Obviousness of the subject matter and lack of novelty over the prior art have been shown by clear and convincing evidence concerning the state of the art at the time of the claimed invention, which evidence was not before the patent office in the prosecution of the application maturing into Patent 853.

19. Plaintiff has failed to show commercial success attributable to the wind-tunnel feature of Patent 853.

20. If Patent 853 were held valid, the Court would find that the claims in issue of Patent 853 read on the accused mowers which accomplish a substantially similar result by substantially similar means as are disclosed in Patent 853.

21. Infringement of the claims of Patent 853 has not been shown to have been wanton or willful.

22. Defendant has failed to establish a defense to infringement based on file wrapper estoppel.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and of the subject matter of the consolidated actions.

2. Patent 614 and its claims in issue are valid in law. Their subject matter was not anticipated under § 102 of Title 35 U.S.C.A. and was novel and nonobvious over the prior art under § 103 of Title 35 U.S.C.A.

3. The claims in issue of Patent 614 are infringed by the manufacture and sale of the accused models of bagging attachments.

4. Infringement was not wanton or willful.

5. Plaintiff is entitled to an injunction restraining further infringement of the claims of Patent 614 in suit, to an accounting for damages sustained through defendant's infringing acts, and to its costs in Civil Action No. 61–C–97.

6. Patent 853 is invalid in law under § 103 of Title 35 U.S.C.A.

7. The presumption of validity of Patent 853 has been overcome by clear and convincing evidence of lack of novelty and of obviousness of its subject matter.

8. If Patent 853 were held valid, the Court would conclude that the claims in issue of Patent 853 are infringed by the manufacture and sale of the accused models of defendant's mower.

9. If Patent 853 were valid, the Court would conclude that plaintiff is not estopped to claim infringement.

10. Defendant is entitled to judgment of dismissal of Civil Action No. 63–C–109 and to its costs therein.

ORDER

Now, therefore, it is adjudged and ordered that defendant, Jacobsen Manufacturing Company, is hereby permanently restrained from the manufacture, use, and sale of models of bagging attachments in infringement of the claims of Patent No. 2,973,614 during the unexpired term of said letters patent.

It is further ordered that plaintiff shall have judgment of damages to be determined by an accounting by a master to whom the matter shall be referred, together with taxable costs against the defendant in Civil Action No. 61–C–97.

It is further ordered that defendant shall have judgment of dismissal of Civil Action No. 63–C–109 as against plaintiff, together with its taxable costs therein.